**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 06-cv-00554-REB-BNB

ROCKY MOUNTAIN CHRISTIAN CHURCH, a Colorado nonprofit corporation

    Plaintiff,

and

UNITES STATES OF AMERICA, intervenor,

    Intervenor Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY, COLORADO,

    Defendant.

---

## ORDER CONCERNING DEFENDANT'S MOTION TO DISMISS

**Blackburn, J.**

       This matter is before me on the defendant's **Motion to Dismiss Amended
Complaint** [#34], filed June 30, 2006.  The plaintiff has filed a response, and the
defendant has filed a reply.  In addition, the United States has been granted permission to
intervene as a plaintiff, and the United States has filed a brief in defense of the
constitutionality of the statute at issue in this case.  The defendant has filed a reply to the
United States' brief.

## I. JURISDICTION

       I have subject matter jurisdiction under **28 U.S.C. 1331** (federal question), **28
U.S.C. § 1343(a)** (deprivation of federally protected rights and privileges), and **28 U.S.C.
§ 1367(a)** (supplemental jurisdiction).

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a).  I must accept all well-pleaded allegations of the complaint as true.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), *cert. denied*, 538 U.S. 999 (2003).  Thus, Rule 12(b)(6) requires dismissal if, taking all well-pleaded facts as true and construing them in the light most favorable to plaintiff, it is clear that he can prove no set of facts entitling him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Rocky Mountain Helicopters, Inc., v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 128 (10th Cir. 1994).

## III.  BACKGROUND

This summary of facts is drawn from the plaintiffs' Amended Complaint and Jury Demand [#25], filed May 12, 2006.  Citations to paragraph numbers (e.g. ¶ 1) refer to the numbered paragraphs in the amended complaint.

Rocky Mountain Christian Church is a nondenominational Christian church founded in 1984 to serve the religious needs of people in the area of Niwot, Colorado.  The church and four of its officials are the plaintiffs in this case, and I will refer to the plaintiffs collectively as "the church."  The church owns a 54.4 acre parcel of property in unincorporated Boulder County.  The property was acquired in separate acquisitions of 15

acres in 1984, 35 acres in 1994, and five acres in 2004.  Under the Boulder County Land

Use Code (code), the property is located in an Agricultural (A) zone district.  This

designation has been effective since the church acquired the first parcel in 1984.  Prior to

1996, a church building of any size was a use by right in the Agricultural (A) zone district.

In 1996, the code was changed, and now requires that any church with an

occupancy load of more than 100, or meeting certain other criteria, to obtain special

review from the Board of County Commissioners of Boulder County.  Since 1996, a church

with an occupancy load of more than 100 cannot be developed in any zone district in

Boulder County as a use by right.  Rather, such a church must go through a discretionary

review process known as special use review.  The church alleges that the special use

review process is lengthy and expensive.  The criteria for special use review are specified

in Section 4-601 of the code.  ¶ 77.  The church claims the special use review criteria are

unquantifiable and subjective.  ¶ 77.  Since the special use criteria were adopted, the

board has adopted formal policies, and has engaged in informal practices, that allow the

board to grant exemptions from the requirements of Section 4-601 of the code.  The

plaintiffs allege that, in making a determination as to whether to approve a use by special

review, the board engages in an individualized assessment of the proposed use and the

property involved.  ¶ 83.  The church claims that the unquantifiable and subjective special

use review criteria, and the board's exemption policies and practices, give the board

unbridled discretion to approve or deny any application for use by special review.  ¶ 84.

Such standards, the church alleges, create the danger that the board may "impermissibly

favor non-religious uses over religious uses, or favor one religion over another."  ¶ 84.

1997 Special Use Application - After the 1996 amendments to the code, the church's building became a non-conforming use.  In 1997, the church filed an application for special use to make the church's building an approved use.  In the same application, the church sought authorization to begin operating a Christian school serving kindergarten through 8th grade students, with a maximum of 400 students.  The church sought to build a two-story addition of about 54,000 square feet for administrative space and classrooms.  Finally, the church sought to expand the seating capacity of the worship center from 997 to 1,380 through interior renovation.  The board approved the 1997 application, but limited the size of the school to 260 persons, serving kindergarten through fifth grade.

The existing church building and all of the proposed expansion were contained on the parcel acquired by the church in 1984, consisting of 15 acres.  However, as a condition of approval, the board required the church to combine as one lot the 15 acre parcel with the 35 acre parcel acquired by the church in 1994.  Further, the board required the church to enter into a development agreement that required the church to grant to the county a 14 acre conservation easement on the northern portion of the church property.

2000 and 2002 Special Use Applications - Two additional applications for special use were filed the church in 2000 and 2002, and both were approved by the board.  The 2000 special use approval authorized the church to increase the size of the church's storage building by 1,600 square feet, and authorized the addition of a sixth grade to the school.  The 2002 special use approval authorized the addition of seventh and eighth grades, with a maximum of 120 students, and the installation of a temporary middle school building for those grades.  Apparently, the resolution approving the 2002 application

required the church to remove the temporary buildings by the end of the 2005-2006 school year, and contemplated that an application for a permanent facility would be submitted by the church.  ¶ 94.

     2004 Special Use Application - The application at issue in this case is the church's 2004 special use application, which was submitted on April 14, 2004, and amended on October 6, 2004.  When the application was filed, and currently, the approved use of the church's property includes a church with a 1,400 seat facility, a preschool for 20 children, a "mom's Day Out" program for up to 40 children, and the Rocky Mountain Christian Academy, serving kindergarten through eighth grades, with a maximum of 380 students. Currently, the church property includes a 106,000 square feet church building, a 2,600 square feet maintenance building, and 7,200 square feet of temporary modular units for the Christian Academy.

     In its 2004 special use application, the church sought to expand its facilities, although the scope of the proposed expansion is not clearly described in the complaint. The church does note that it modified its application to eliminate a proposed 12,000 square feet balcony addition to its sanctuary, reducing its request for additional seating from 1,000 to 150, and by eliminating a proposed 8,000 square feet basement addition. ¶ 21.  The church also deleted its request to increase the population of the Christian Academy from the currently permitted 380 students to 540 students, and modified other requests concerning parking, lighting, and a buffer zone on the western side of its property.  ¶ 21.  The board denied the church's application.

     The Church's Claims - The church claims that the county's conduct in processing the church's application, and the county's denial of the church's 2004 special use

application, violated various provisions of the United States and Colorado constitutions. The church alleges that the county's actions discriminated both against religion, and between religions, by unreasonably limiting religious assemblies and institutions and structures within the county.  As part of these claims, the church alleges that the county has imposed a substantial burden on the church's exercise of religion, and that the burden imposed does not serve a compelling governmental interest.  In addition, the church claims the county's actions abridge its rights of free speech, free association, and its right to petition.  The church alleges also that the county's actions violate the requirements of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), **42 U.S.C. §§ 2000cc - 2000cc-5**. In its motion to dismiss, the defendant challenges many, but not all, of the church's claims.

## IV.  RIPENESS

The county argues that the church's First Amendment, equal protection, and RLUIPA claims are not ripe, and that this court, therefore, does not have subject matter jurisdiction over those claims.  In ***Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City***, 473 U.S. 172, 194 (1985), the Supreme Court held that a takings claim is not ripe until 1) the defendant government entity has reached a final decision on the application of the regulations in question; and, 2) the plaintiff has sought compensation through procedures provided by the state.  The Tenth Circuit has applied this ripeness test to claims involving land use decisions, including due process and equal protection claims. ***Signature Properties Intern. Ltd. Partnership v. City of Edmond***, 310 F.3d 1258, 1265 (10th Cir. 2002).

> The ripeness doctrine cautions a court against premature adjudication of
> disputes involving administrative policies or decisions not yet formalized and

felt in a concrete way by the challenging parties. The ripeness inquiry is threefold: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.

***Signature Properties***, 310 F.3d at1265 (quotation and citation omitted).

In this case, consideration of these factors indicates that the church's First Amendment, equal protection, and RLUIPA claims are ripe. Delayed review by this court will cause some hardship to the plaintiff. It is apparent that both the church and the county face some level of uncertainty in determining how the United States and Colorado constitutions, and RLUIPA, apply to the county's special use decisions. Requiring the church to submit additional special use applications to see if they can obtain approval of some level of expansion of its facilities likely would be a long process. This process would not resolve the uncertainty about how the applicable law controls this case. Resolution of this lawsuit will resolve that uncertainty.

Resolution of this lawsuit will not inappropriately interfere with further administrative action. Such action may proceed, if the parties so choose, while this suit is pending, and the pendency of this suit does not bar the parties from reaching an accommodation among themselves. Finally, nothing in the record indicates that further factual development at the county administrative level would be of benefit to the court. Consideration of these factors indicates also that the county's decision to deny the church's special use application is sufficiently final, for the purpose of the ripeness requirement.

I note also that the county argues that the church first must pursue procedures under state law to obtain compensation for the challenged decisions before its claims are

ripe.  The church has brought a claim in this case seeking relief under C.R.C.P. 106.  That is a state procedure under which the church properly may challenge the county's special use decision.  The pendency of the church's Rule 106 claims in this case is sufficient to satisfy that aspect of the ripeness requirement.  ***San Remo Hotel, L.P. v. City and County of San Francisco***, 545 U.S. 323, 346 (2005) (ripeness requirement does not require resort to piecemeal litigation).

## V.  STANDING

The county argues that the church lacks standing under the RLUIPA to challenge the county's limitations on churches in the Forestry District designated by the county.  This claim is asserted in the church's sixth claim for relief.  The church has not alleged that it owns or has attempted to acquire property in the Forestry District.  Assuming the church's allegations to be true, the church has not alleged that the county's Forestry District limitations have caused the church an injury sufficient to establish standing to assert a RLUIPA claim based on restrictions in the county's Forestry District.  However, the sixth claim for relief also contains claims concerning other aspects of the code, particularly the content and application of section 4-601 of the code.  The church sufficiently has alleged that it has been injured by the application of section 4-601, and this aspect of the sixth claim for relief is not subject to dismissal.

## VI.  FACIAL ATTACKS

The county argues that the church's allegations are insufficient to support a facial attack on the code and on the Colorado land use statutes challenged by the church, based on the First Amendment's Free Exercise Clause, free speech, equal protection, and rights to association and assembly.  These appear to be close questions, but I note that a

8

regulatory scheme that vests unbridled discretion in the decision maker, and which arguably is over-broad, is subject to a facial challenge. ***FW/PBS, Inc. v. City of Dallas***, 493 U.S. 215, 223 (1990).  Assuming the church's allegations to be true, their claims fall arguably within this realm.  I note also that the parties dispute which constitutional standard should be used to determine the church's facial attack based on the Free Exercise clause.  In this context, I conclude that the church has stated arguable claims for a facial attack on the code sections and Colorado land use statutes it is challenging.

## VII.  EQUAL PROTECTION - AS APPLIED CLAIM

The county argues that the church's allegations do not state a claim for an as-applied challenge to the code based on the Equal Protection Clause.  The county argues that the church has not alleged that it is similarly situated to any other person or entity, and that the church was treated differently than the church in the county's land use determinations.  Applying the minimal requirements of FED. R. CIV. P. 8, which requires a party to provide a "short and plain statement" of the party's claim in the complaint, I conclude that the church's allegations are sufficient to state an as-applied equal protection claim.  Most notably, ¶ 130 of the complaint describes the treatment of other institutions that arguably are situated similarly to the church, but were treated differently by the county.

## VIII.  IMMUNITY & RIGHT TO PETITION CLAIMS

When the Board of County Commissioners denied part of the church's special use application, the board concluded that the denial did not constitute a violation of RLUIPA.  However, the board noted that it is not the appropriate or final arbiter of this issue, and, therefore, authorized and directed the county attorney to file a declaratory judgment action

to confirm whether the board's decision complied with RLUIPA.  The board filed such a suit in this court.  ***Board of County Commissioners v. Rocky Mountain Christian Church***, 06-cv-00486-MSK-BNB (order of dismissal filed March 19, 2006).

In its eleventh and twelfth claims for relief, the church alleges that the board filed the declaratory judgment case in retaliation for the church's exercise of its rights to free speech and to petition the government, as protected by the United States and Colorado constitutions.  The county argues that these claims are based on the county's exercise of its right to petition, and the county is, thus, entitled to right to petition immunity from those claims.  Recently, the Tenth Circuit has said that "a governmental lawsuit brought with the intent to retaliate against a citizen for the exercise of his First Amendment rights is itself a violation of the First Amendment and provides grounds for a § 1983 suit."  ***Beedle v. Wilson***,  422 F.3d 1059, 1066 (10th Cir. 2005).  The church's allegations are sufficient to state such retaliation claims against the county.

## IX.  RLUIPA

The county argues that the church's RLUIPA claims must be dismissed because the land use provisions of the RLUIPA are unconstitutional.  The county argues that Congress did not have authority under either the Commerce Clause or under Section 5 of the Fourteenth Amendment to enact the RLUIPA.  In addition, the county claims that the RLUIPA violates the Establishment Clause of the First Amendment, the Tenth Amendment, and the doctrine of separation of powers.  The church and the intervenor, the United States of America, argue that the RLUIPA is constitutional.

## A.  Legal Background of RLUIPA

RLUIPA is the latest Congressional legislative response to a series of Supreme Court cases and legislation by Congress that define the legal protections accorded to religion.  I will summarize those developments briefly.

In 1963, the Supreme Court decided *Sherbert v. Verner*, 374 U.S. 398 (1963).  In *Sherbert*, the Court invalidated a state unemployment compensation rule that conditioned the availability of benefits on an applicant's willingness to work under conditions forbidden by the applicant's religion.  Sherbert was a member of the Seventh-day Adventist Church and was discharged by her employer because she would not work on Saturday, the Sabbath day of her faith.  *Id*. at 399.  State unemployment officials found that Sherbert was not qualified for unemployment benefits because her refusal to accept a job that required her to work on Saturday amounted to a refusal to accept suitable work when offered.  *Id*.  The Supreme Court ruled that this finding violated Sherbert's free exercise rights:

> The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship.

*Id*. at 404.  The Court held that governmental actions that substantially burden a religious practice must be justified by a compelling governmental interest.  *Id*. at 403.

In 1990, the Supreme Court decided *Employment Division v. Smith*, 494 U.S. 872, 879 (1990), which held that the Free Exercise Clause does not "relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or

proscribes).'" In *Smith*, the plaintiffs' religious use of peyote resulted in their dismissal from their employment. The state of Oregon concluded that the use of peyote was misconduct, and that this basis for dismissal from employment disqualified the plaintiffs from receipt of Oregon unemployment compensation benefits. The *Smith* Court refused to apply the *Sherbert* balancing test. *Smith*, 494 U.S. at 883-84. The Court noted that *Sherbert* and related cases involved systems of "individualized exemptions" that lent themselves to individualized governmental assessment of the reasons for a person's conduct. *Smith*, 494 U.S. at 884. The *Smith* Court concluded that *Sherbert* has been confined largely to the context in which it was decided, denial of unemployment compensation, and that the *Sherbert* rule does not apply to neutral laws of general applicability. *Smith*, 494 U.S. at 883 - 884.

In response to *Smith*, Congress enacted in 1993 the Religious Freedom Restoration Act (RFRA). 42 U.S.C. §§ 2000bb through 2000bb-4. RFRA purported to codify the *Sherbert* test and to apply that test to all government acts that "substantially burden" religious exercise, even if the burden results from a rule of general applicability. *City of Boerne v. Flores*, 521 U.S. 507, 515 (1997). In *City of Boerne v. Flores*, 521 U.S. at 532 (1997), the Supreme Court held that RFRA was unconstitutional as it applied to state and local governments. 521 U.S. at 532 - 536. The Court concluded that Congress had exceeded its authority under Section 5 of the Fourteenth Amendment when it passed RFRA. *Id*.

Under Section 5, the Court said, Congress has the authority to pass legislation to enforce constitutional rights. 521 U.S. at 518. In *City of Boerne*, the Court concluded that RFRA "is so out of proportion to a supposed remedial or preventive object that it

cannot be understood as responsive to, or designed to prevent, unconstitutional behavior. It appears, instead, to attempt a substantive change in constitutional protections." 521 U.S. at 532. For example, the Court concluded that RFRA would accomplish a "substantive alteration" of the holding in *Smith*. 521 U.S. at 534. "Laws valid under *Smith* would fall under RFRA without regard to whether they had the object of stifling or punishing free exercise." *Id*.

## B. RLUIPA Land Use Provision

There is little dispute that RLUIPA "was adopted in response to the Supreme Court's partial invalidation in 1997 of the Religious Freedom Restoration Act of 1993 in *City of Boerne v. Flores*." *Freedom Baptist Church v. Township of Middletown*, 204 F. Supp. 2d 857, 860 (E.D. Pa. 2002). Consistent with its name, the RLUIPA focuses on two areas: 1) land use, and; 2) institutionalized persons. Only the land use provision is at issue here. The land use provision is codified at 42 U.S.C. § 2000cc, which provides:

### § 2000cc - Protection of land use as religious exercise

(a) Substantial burdens

(1) General rule

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution–

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

(2) Scope of application

This subsection applies in any case in which–

> (A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

> (B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

> (C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

(b) Discrimination and exclusion

(1) Equal terms

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

(2) Nondiscrimination

No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

(3) Exclusions and limits

No government shall impose or implement a land use regulation that--

> (A) totally excludes religious assemblies from a jurisdiction; or

> (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

### C.  Unnecessary Resolution of Constitutional Questions

If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable. And so, as questions of federal constitutional power have become more and more intertwined with preliminary doubts about local law, we have insisted that federal courts do not decide questions of constitutionality on the basis of preliminary guesses regarding local law.

*Spector Motor Service v. McLaughlin*,  323 U.S. 101, 105 (1944) (Frankfurter, J.). "This is a 'fundamental rule of judicial restraint,' which has received the sanction of time and experience." *Zobrest v. Catalina Foothills School Dist.*,  509 U.S. 1, 14-15 (1993) (citing *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.*, 467 U.S. 138 (1984)).  A constitutional issue should not be addressed if a case can be disposed of on a less far-reaching ground.

I have reviewed carefully the plaintiffs' amended complaint and the parties' arguments about the constitutionality of the RLUIPA.  I note, however, that apparent in the record are unresolved factual issues about the applicability of the RLUIPA land use provision to this case.  Most notably, § 2000cc is applicable in this case only if the land use regulation in question "imposes a substantial burden on the religious exercise" of the church.  § 2000cc(a)(1).  Further, the applicability of the RLUIPA land use provision hinges on the applicability of one of the jurisdictional hooks, described in § 2000cc(a)(2).  The Commerce Clause hook, § 2000cc(a)(2)(B), requires proof that the substantial burden in question affects interstate commerce, or that its removal would affect interstate commerce.  The Fourteenth Amendment hook, § 2000cc (a)(2)(C), requires proof that the substantial burden was imposed in the implementation of a land use regulation that involved an individualized assessment of the proposed land use.

These issues present narrow questions about the applicability of the RLUIPA land use provision to this case.  Resolution of these questions may result in a determination that RLUIPA is not applicable to this case.  I conclude that the narrow issue of the statute's applicability must be resolved before I properly may address the much broader question of the statute's constitutionality.

### 1.  Substantial Burden

The church alleges that the county has imposed a substantial burden on its exercise of religion, but the record is not yet developed to the point where any evidence on this issue has been submitted. Considering the definitions of substantial burden, outlined below, it is possible that the evidence in this case will not support the church's claim that it is suffering a substantial burden on its exercise of religion.  If that circumstance arises, then the RLUIPA does not apply in this case.  In that circumstance, the church's RLUIPA claim would be resolved on narrow statutory grounds, and resolution of the broader constitutional issues would not be necessary.

The RLUIPA does not define "substantial burden," but the legislative history of the RLUIPA indicates that the Supreme Court's definition of the term is to be used in applying the RLUIPA.  See 146 Cong.  Record, p. 28.. 7774-01,7776 (daily ed. July 27, 2000) ("The term 'substantial burden' as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or religious exercise").  The "free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice . . . ." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,  508 U.S. 520, 565 (1983) (quotation and citation omitted).  A substantial burden is a regulation that significantly

inhibits or constrains conduct or expression that constitutes an exercise of religion. Stated otherwise, a substantial burden exists when the state puts "substantial pressure on an adherent to modify his behavior and violate his beliefs." *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981).  A substantial burden must place more than an inconvenience on religious exercise, and must have more of an impact than making the practice of religious beliefs more expensive. *Braunfeld v. Brown*, 366 U.S. 599, 605-607 (1961); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).

It must be noted that the RLUIPA has defined the term "religious exercise" more broadly than the Supreme Court's cases applying the Free Exercise Clause.  Generally, the Supreme Court has limited free exercise claims to religious beliefs or practices that are central or fundamental to a person's religion. *Church of the Lukumi Babalu Aye* 508 U.S. at 565; *Grace United Methodist Church*, 451 F. 3d at 662.  RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," including the "use, building, or conversion of real property for the purpose of religious exercise. . . ." § 2000cc-5 (7).

Applying Supreme Court precedent relevant to the concept of substantial burden, and the RLUIPA's broad definition of religious exercise, the Seventh Circuit arrived at the following definition of "substantial burden" in applying RLUIPA:

> Application of the substantial burden provision to a regulation inhibiting or constraining any religious exercise, including the use of property for religious purposes, would render meaningless the word "substantial," because the slightest obstacle to religious exercise incidental to the regulation of land use - however minor the burden it were to impose - could then constitute a burden sufficient to trigger RLUIPA's requirement that the regulation advance a compelling governmental interest by the least restrictive means. We therefore hold that, in the context of RLUIPA's broad

17

definition of religious exercise, a land-use regulation that imposes a
substantial burden on religious exercise is one that necessarily bears direct,
primary, and fundamental responsibility for rendering religious exercise -
including the use of real property for the purpose thereof within the regulated
jurisdiction generally - effectively impracticable.

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir.

2003), *cert. denied*, 541 U.S. 1096 (2004); *But cf. Midrash Sephardi, Inc. v. Town of*

*Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) (rejecting *Civil Liberties for Urban*

*Believers* definition of substantial burden under RLUIPA as overly restrictive).  Although I

have not concluded that the Seventh Circuit's definition of substantial burden necessarily

is correct, this definition demonstrates how the substantial burden requirement may

present a significant limitation on the applicability of the RLUIPA.

On the current record, which includes no evidence, I can indulge the assumption

that RLUIPA is applicable to this case only if I assume also that the county's zoning law

imposes a substantial burden on the church.  Depending on the precise definition of the

term "substantial burden," and the evidence in support of the church's claim of substantial

burden, I or a jury may or may not find facts that would support the conclusion that the

county has imposed a substantial burden on the church's exercise of religion.  If there is

no finding of a substantial burden, then RLUIPA is not applicable to this case.  To borrow

Justice Fankfurter's phrase, an assumption that this case involves a substantial burden on

the church's exercise of religion is a "preliminary guess" about the applicability of the

RLUIPA to this case.  I decline to address and resolve the constitutional issues based on

this preliminary guess.

## 2. Jurisdictional Hooks

The church alleges that the construction project it seeks to undertake would cost more than 30 million dollars.  ¶ 101.  If that is true, then some would contend it would be easy to demonstrate that the project at issue falls within the Commerce Clause jurisdictional hook of the RLUIPA, § 2000cc(a)(2)(B).

The church alleges also that the county's zoning code, and the practices and procedures the county uses to administer the code, constitute "individualized assessments of the proposed uses for the property involved."  § 2000cc(a)(2)(C).  If so, then this case falls within the Fourteenth Amendment jurisdictional hook of § 2000cc(a)(2)(C).  As recently demonstrated in *Grace United Methodist Church v. City of Cheyenne*, 451 F. 3d 643 (10th Cir. 2006), not every zoning variance scheme constitutes an individualized assessment that is subject to strict scrutiny under the applicable constitutional standards.  451 F.3d at 653.  The plaintiffs and the United States both argue that the RLUIPA generally codifies the Supreme Court's jurisprudence on the Free Exercise clause.  If so, then this case presents the question of whether the zoning variance scheme at issue here is the type of individualized assessment that triggers the applicability of the RLUIPA under § 2000cc(A)(2)(C).

To assume that the church's construction project would affect interstate commerce, or to assume that the zoning scheme in question subjected the church to an individualized assessment that triggers the application of the RLUIPA's strict scrutiny standard, would amount to a preliminary guess about the applicability of the RLUIPA to this case.  Again, I decline to address the broader constitutional issues based on such preliminary guesses.

### 3.  Conclusion

Only when I have a sufficient evidentiary basis to determine the narrow statutory question of whether the RLUIPA is applicable to this case, and only if I determine that the statute is applicable, will I then be in a position properly to address the much broader and weightier question of the statute's constitutionality.  Therefore, the county's motion to dismiss the church's claims under the RLUIPA is denied.  However, this denial is without prejudice to the extent the county may choose to raise this issue again when the record has been developed to the point that a fair determination of the statute's applicability can be made.

## X.  INVERSE CONDEMNATION - STATUTE OF LIMITATIONS

When the church's 1997 special use application was approved, the board required the church to enter into a development agreement which required the church to grant to the county a 14 acre conservation easement on the northern portion of the church property.  The site plan that was approved in connection with this special use application indicated that "the balance of the Second Parcel not subject to the Conservation Easement was reserved for future expansion."  ¶ 260.  The term "Second Parcel" refers to the 35 acres acquired by the church in 1985.  ¶ 58.  According to the church, "(a)s long as the remainder of the Second Parcel could be used for expansion of the Church as indicated on the site plan approved in connection with the granting of the Conservation Easement, the dedication requirement bore some nexus to the proposed use of the Property and was roughly proportional . . . both in nature and extent to the impact of the proposed use or development of the Property."  ¶ 262.

As the church notes, a dedication of a property interest exacted on an *ad hoc* basis as a condition of development approval violates the takings clause unless there is an essential nexus with a legitimate governmental interest and the government makes an individualized determination demonstrating that the extent of the dedication is roughly proportional to the impact of development.  ***Dolan v. City of Tigard***, 512 U.S. 374, 391 (1994); ***Nollan v. Calf. Coastal Comm'n***, 483 U.S. 825, 837 (1987).  The rough proportionality test applies in "the special context of exactions – land use decisions conditioning approval of development on the dedication of property to public use."  ***City of Monterey v. Del Monte Dunes at Monterey, LTD***, 526 U.S. 687, 702 (1999).

The church alleges that in "Resolution 98-30, the Board required as a condition of the Church's application designated as Docket SU-97-12 (the 1997 special use application) that . . . the Church dedicate a conservation easement to the County upon fourteen acres of the Property (the "Conservation Easement").  ¶ 259.  Elsewhere, the church alleges, with greater clarity, that the conservation was a "condition of approval" of the 1997 special use application.  ¶ 91.  The church agreed to this condition, the 1997 special use application was approved, and the church granted the conservation easement.  The church does not argue that the conservation easement requirement amounted to an inverse condemnation as of 1998.  However, the church claims that the conservation easement ripened into an inverse condemnation when the church's 2004 special use application, the application at issue in this case, was denied.  This is so, the church alleges, because the denial of the 2004 special use application caused the 1998 conservation easement to bear "no nexus to the allowed use of the Property and [to be]

not roughly proportional in either nature or extent to the impact of the allowed use and development of the Property." ¶ 263.

The county argues that any inverse condemnation claim based on the conservation easement accrued in 1998, when the easement was made a condition of the county's approval of the 1997 special use application. The county further argues that the inverse condemnation claim is barred because the two year statute of limitations has expired. §13-80-102(1)(h), C.R.S. I agree.

The conservation easement was a "condition of approval" of the 1997 special use application. ¶ 91. Assuming the allegations in the complaint to be true, it readily is apparent that if the easement requirement violated the rough proportionality test, then that violation and the resultant harm were apparent when the easement was imposed as a condition of the board's approval of the 1997 application. The terms of the approved 1997 application and the terms of the conservation easement were known when the application was approved in 1998. With that information, the church or anyone else could assess whether the easement requirement satisfied the rough proportionality test.

The parties agree that a two year statute of limitations is applicable to an inverse condemnation claim in Colorado. ***Bad Boys of Cripple Creek Min. Co., Inc. v City of Cripple Creek***, 996 P. 2d 792, 795 (Colo App. 2000). This case, first filed in March of 2006, was filed more than two years after the inverse condemnation claim accrued in 1998.

> While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. Statute of limitations questions may, therefore, be appropriately resolved on a Fed.R.Civ.P. 12(b) motion.

*Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 (10th Cir.1980).  Here, the church's allegations demonstrate that any inverse condemnation claim based on the conservation easement accrued in 1998.  Therefore, the church's inverse condemnation claim must be dismissed because it is barred by the two year statute of limitations.

## XI.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That under FED. R. CIV. P. 12(b)(6), the defendant's **Motion to Dismiss Amended Complaint** [#34], filed June 30, 2006, is **GRANTED** as to that portion of the plaintiffs' sixth claim for relief that challenges the defendant county's regulation of churches in the Forestry District;

2.  That under FED. R. CIV. P. 12(b)(6), the defendant's **Motion to Dismiss Amended Complaint** [#34], filed June 30, 2006, is **GRANTED** as to eighteenth claim for relief, inverse condemnation;

3.  That the defendant's **Motion to Dismiss Amended Complaint** [#34], filed June 30, 2006, otherwise is **DENIED**.

Dated March 30, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**