# EXHIBIT 4

### 4-600 Uses Permitted by Special Review and Limited Impact Special Review *(9/5/96)*

**A.** A use permitted by special review may be established in a zoning district only upon approval of the Board, after review by the Planning Commission, and subject to the conditions set forth in an approval of the use by the Board.

**B.** A use permitted through limited impact special review may be established in a zoning district only upon approval of the Board, and subject to the conditions set forth in an approval of the use by the Board

### 4-601 Standards and Conditions

**A.** A use will be permitted by special review only if the Board finds that the proposed use meets the following standards and conditions:

1. except as otherwise noted, the use will comply with the minimum zoning requirements of the zoning district in which the use is to be established, and will also comply with all other applicable requirements;
2. will be in harmony with the character of the neighborhood and compatible with the surrounding area;
3. will be in accordance with the Comprehensive Plan;
4. will not result in an over-intensive use of land or excessive depletion of natural resources;
5. will not have a material adverse effect on community capital improvement programs;
6. will not require a level of community facilities and services greater than that which is available;
7. will not result in undue traffic congestion or traffic hazards;
8. will not cause significant air, odor, water, or noise pollution;
9. will not require amendment to the Regional Clean Water Plan;
10. will be adequately landscaped, buffered, and screened; and
11. will not otherwise be detrimental to the health, safety, or welfare of the present or future inhabitants of Boulder County.

**B.** If the proposed use is approved or conditionally approved, the Board may impose such conditions and safeguards to insure compliance with the requirements, standards, and conditions of this Section 4-600. The violation of any condition, safeguard, or commitment of record shall be sufficient grounds for revocation of the special review approval by the Board, after a public hearing held in accordance with provisions of Paragraph 3-205(C).

**C.** A development agreement must be submitted and approved by the Board.

**D.** Where appropriate, in order to enable the proposed use to meet the standards set forth in (A) above, the Board may require the dedication of a perpetual conservation easement upon so much of the site as may be determined necessary to mitigate impacts of special uses.

### 4-602 Special Provisions

**A.** Special Review Approval for Mining

1. In addition to the standards of approval set forth in Paragraph 4-601(A), an applicant for open mining, subsurface mining, or limited impact mining must also meet the following:

   a. compliance with a plan of reclamation;
   b. compliance with use, location, and setback regulations established by the Board for the proposed operation; and

Boulder County Land Use Code

    c.    compliance with bulk regulations established by the Board for areas reclaimed in accordance with the plan of reclamation.

  2.    If the proposed mining use is approved, the Board shall impose such conditions and safeguards as are necessary to insure continued compliance with the requirements set forth in this Paragraph.

**B.**    Special Review for Development in the ED District

  1.    In addition to the standards of approval set forth in Paragraph 4-601(A), approval for a planned development in the ED district must also meet the following:

    **a.**    Employment projections and projected space requirements demonstrate a need for such a development.

    **b.**    The applicant is the intended user of the site and has demonstrated legal interest in the property.

    **c.**    Direct and indirect local employment opportunities for the community, that would result if the application were to be approved, are consistent with the rate of growth of population as projected within the Comprehensive Plan.

    **d.**    The public benefits are substantial and there will be no significant negative impacts on the quality of life of those residents in the surrounding area, and no major negative fiscal, service, environmental, or related land use impacts upon the County, or other communities in the County.

    **e.**    Uses Permitted: Uses shall have no harmful or unpleasant effects which would be more objectionable than the normal environmental features of surrounding areas. Uses within the ED district shall be compatible with surrounding areas of noise, odors, fumes, glare, vibration, smoke, vapors and gases, electrical emissions, and industrial wastes.

    **f.**    Traffic: Traffic going to and from the ED district shall be permitted on nonresidential streets only. Within the ED district, access and service roads from existing through streets may be required. Traffic routes within the ED district shall ordinarily be at least 100 feet from outer boundaries of the Economic Development District.

    **g.**    Truck Loading Facilities: Adequate provision shall be made for off-street truck loading facilities. These areas shall not be in a front yard and shall not be within 100 feet of a residential zoning district.

    **h.**    Landscaping: The front yard of each principal use within an ED district shall be planned (and subsequently maintained) in a dust-free condition by suitable landscaping with trees, shrubs, or other planted or natural ground cover. Other yards within an ED district shall be similarly landscaped or paved with asphaltic, concrete, rock, oil surfacing or other resilient materials.

    **i.**    Storage: All materials and equipment used in connection with an economic development project shall be enclosed within a building or enclosed within a solid wall or fence at least six feet in height. Ordinarily such storage areas shall be at least 100 feet from any property line or street line.

    **j.**    Lot Coverage: Developed areas may constitute no more than 40% of the entire site, unless it is determined that it is in the best interest of the



community to allow a larger area to be developed in which case developed areas may constitute as much as 50% of the site. The purpose of this requirement is to assure that the development will be compatible with the surrounding area.

k.  Construction Plans: Preliminary construction plans for the proposed buildings and preliminary engineering plans for installation of necessary utilities shall be presented prior to approval of a site plan.

l.  Number of Employees or Residents: An estimate of the maximum number of employees or residents contemplated for the proposed development shall be presented.

m.  Site Plan: The site plan and accompanying documents as approved by the Board shall be filed with the Director. Location and size of the undeveloped area and siting and phasing of the developed area must be approved as part of the application. The effects of phasing on population increases that may result from an expansion of the employment base shall be considered, along with all other relevant impacts.

n.  Certificate of Occupancy: Prior to the use or change in use of a structure approved through this process, a certificate of occupancy shall have been issued by the Building Official. Such certificate shall show that such building or premises and the proposed use are in conformity with the provisions of this Code and with all requirements set forth by official action of the Board in their approval of the site plan.

2.  A special review approval for a use within the ED district shall expire three years after the date upon which it was issued, if not more than one-half the floor area of all buildings and improvements shown on the approved site plan has been constructed within that period of time.

C.  Special Review for Uses which Exceed Additional Requirements of Zoning Districts

1.  In addition to the standards of approval set forth in Paragraph 4-601(A), a use which exceeds these additional requirements must also meet the following:

a.  Employment projections and projected space requirements must demonstrate a need for such a development.

b.  The applicant shall be the intended user of the site and shall have a demonstrated legal interest in the property.

c.  It shall be demonstrated that direct and indirect local employment opportunities for the community that would result, if the application were to be approved, are consistent with the rate of growth of population as projected within the Comprehensive Plan.

d.  The development may be approved only if the public benefits are substantial and there will be no significant negative impacts on the quality of life in the surrounding area, and no major negative fiscal, service, environmental, or related land use impacts.

e.  Construction Plans: Preliminary construction plans for the proposed buildings and preliminary engineering plans for installation of necessary utilities shall be presented prior to approval of a site plan.

f.  Number of Employees or Residents: An estimate of the maximum number of employees or residents contemplated for the proposed development shall be presented.

Boulder County Land Use Code

g.  Site Plan: The site plan and accompanying documents as approved by the Board shall be filed with the Director. Location and size of the undeveloped area and siting and phasing of the developed area must be approved as part of the application. The effects of phasing on population increases that may result from an expansion of the employment base shall be considered, along with all other relevant impacts which are likely to result from such siting and phasing.

h.  Certificate of Occupancy: Prior to the use or change in use of a structure approved through this process a certificate of occupancy shall have been issued by the Building Official. Such certificate shall show that such building or premises and the proposed use are in conformity with the provisions of this Code and with all requirements set forth by official action of the Board in their approval of the site plan.

i.  A special review approval for a nonurban development shall expire one year after the date upon which it was issued if a site plan for the proposed development is not approved by the Board within that year, or three years after the date upon which it was issued if not more than one-half the floor area of all buildings and improvements shown on the approved site plan has been constructed.

D.  Special Review for a Telecommunication Facility

1.  In addition to the listing of adjacent owners required as part of the title report submitted with the special review application, the Land Use Staff may prepare a similar listing of all owners and their addresses of real property within one-half mile of the location of the proposed facility. This listing may be used in addition to the adjacent owner list for all referral and notice requirements of Article 3.

2.  In addition to compliance with those conditions required within or imposed by the Board of County Commissioners pursuant to Paragraph 4-601(A), an applicant seeking special review approval for a telecommunication facility shall comply with the following conditions and requirements:

a.  Alternative site and/or design studies provided by the applicant shall show that reasonable consideration has been given to such alternative sites and/or designs and the proposal is the most acceptable alternative to Boulder County.

b.  The alternative of consolidation of multiple telecommunication facilities onto a single tower, either by use of an existing tower or moving existing facilities to the proposed tower, shall be studied by the applicant and, when feasible and not otherwise detrimental, shall be considered the preferred alternative. Colocation may not be required when, in the opinion of the Director or the Board of County Commissioners, as appropriate, the consolidation of facilities will create an over-intensive use of the existing site, or will create a significant negative visual impact on surrounding private or public lands. (8/12/99)

c.  When feasible, telecommunication facilities shall be located adjacent to, on, or incorporated into existing or proposed buildings or other structures.

d.  Where a telecommunication system uses a network of facilities, the applicant shall demonstrate that a comprehensive approach for



evaluating potential sites in Boulder County with a view to minimizing the number of sites required and any adverse impact has been taken.

    e.    Proposed landscaping and/or screening shall be in harmony with the character of the neighborhood and compatible with the surrounding area.

**E.**    Special Review for a Use of Community Significance

    **1.**    A use of community significance is a use which the Board determines to be a use having significant historic, cultural, economic, social, or environmental value to Boulder County, which does not conform to the regulations of the district in which the use is located as a result of either the adoption or amendment of this Code, and which can not be made conforming through any other county discretionary review process.

    **2.**    A use of community significance may be approved through special review even though it is not in conformance with the Comprehensive Plan, and does not meet the bulk or minimum lot size requirements of the zoning district in which it is located.

    **3.**    In addition to the standards of approval set forth in Paragraph 4-601(A), a use of community significance must also meet the following:

        **a.**    The use does not impair the Goals and Policies of the Comprehensive Plan, considering the nature and history of the use.

        **b.**    The use has a significant historic, cultural, economic, social, or environmental value to the inhabitants of Boulder County as a whole, or to a recognized community of interest within the County.

        **c.**    The significant community interest served by the use can not be served by the relocation of the use to the nearest zoning district in which it could be permitted by right or by special review, or by the existence or location of similar uses elsewhere in the County.

        **d.**    The applicant has obtained, or commits to obtain as a condition of the special review approval, all applicable federal, state, and local licenses or permits, and is in compliance with all applicable federal, state, and local regulations.

## 4-603 Modification of a Special Review Approval

**A.**    No substantial modification of the provisions of a special review approval shall be permitted by the Board of County Commissioners, except upon a finding following review and public hearings held in accordance with the provisions of Article 3 of this Code, that the modification is consistent with the standards set forth in this Section 4-600.

**B.**    No activity or use authorized pursuant to an approval granted subject to the provisions of this article shall be permitted or allowed to commence unless a site specific development agreement has been approved pursuant to the requirements of this Code.

## 4-604 Limitation of Uses by Special Review

**A.**    Subject to vested rights, no use by special review shall commence operation or construction later than five years from the date of the Board approval or conditional approval.

**B.**    Any approved use by special review which does not significantly commence operation or construction on any portion of the special use permit within five calendar years after the use has received Board approval, shall lapse, and shall be of no further force and effect unless a new discretionary approval is granted under this Code. If a vesting

**Boulder County Land Use Code**

period of longer than five years is expressly approved as part of the special use permit, the approval shall lapse if operation or construction is not commenced within the vesting period.

C.  Any approved use by special review which commences operation or construction as required under Subsection (B), immediately above, shall lapse, and shall be of no further force and effect, if the use is inactive for any continuous five-year period. If this period of inactivity occurs, the use may not be recommenced without a new discretionary approval granted under this Code. An approved special use shall be deemed inactive under this Subsection (c) if there has been no activity under any portion of the special use permit for a continuous period of five years or more as a result of causes within the control of the special use permittee or agent.



## 4-800 Site Plan Review (as amended on June 26, 2003)

### 4-801 Purpose

**A.**  Site plan review is an administrative review procedure for certain proposed developments which are considered likely to significantly impact important ecosystems, agricultural lands, surrounding land uses and neighborhoods, and infrastructure needs and demands, and which may be unsafe due to natural hazards. *(9/5/96)*

**B.**  This site plan review process for proposed new development will allow any significant adverse impacts on the environment, agricultural lands, surrounding land uses and neighborhoods, and infrastructure to be identified, evaluated, and avoided or acceptably mitigated through the imposition of reasonable conditions. *(9/5/96)*

### 4-802 Applicability and Scope of the Site Plan Review Process for Development

**A.**  Site plan review shall be required for (unless not required or waived pursuant to sections B and C below):

1.  Any development requiring a building permit on vacant parcels in unincorporated Boulder County

2.  Any cumulative increase in floor area of more than 1,000 square feet on a parcel over that existing as of September 8, 1998

   a.  In calculating the 1,000 square foot threshold, any demolition and rebuilding of any existing structure or any portions thereof, shall be counted toward the threshold

   b.  Any construction of floor area not legally existing as of September 8, 1998 shall be counted toward the threshold

   c.  Applies to all parcels in unincorporated Boulder County

   d.  Applies to all structures, principal or accessory

3.  New structures of any size requiring a building permit when the site is located within a Natural Landmark or Natural Area as described in the Environmental Resources Element of the Comprehensive Plan and shown on the Zoning District Maps of Boulder County

4.  New structures 500 square feet or more in the 250' buffer associated with a Natural Landmark or Natural Area, as described in the Environmental Resources Element of the Comprehensive Plan and shown on the Zoning District Maps of Boulder County (5/2/00) (10/17/02)

5.  New structures or additions to existing structures of any size on conservation easements held by Boulder County

6.  Development occurring in a Rural Community District

7.  Any development or earthwork requiring a floodplain development permit

8.  Any Boulder County access permit issued by the Transportation Department

9.  Any grading permit for over 50 cubic yards of earthwork

10.  A change in use of a parcel, except to residential

11.  A commercial telecommunications facility utilizing an existing structure and meeting the height requirements of the district in which the facility is located

12.  Any proposal which is eligible to be waived from site plan review, but for which a waiver was not granted

**B.**  Site plan review shall not be required for:

1.  Earthwork that is part of normal agricultural or mining practices

2.  Accessory structures less than 1,000 square feet

November 1, 2005

**Boulder County Land Use Code**



        **a.**    Except in those circumstances in which site plan review is required because of cumulative threshold specified in this section A(2)

        **b.**    Except in a Natural Landmark, a Natural Area, or in the associated 250' buffer as specified in this section A(3) & (4)

        **c.**    Except on conservation easements held by Boulder County

    **3.**    Restoration of a structure that has been damaged or destroyed by causes outside the control of the property owner or their agent provided the restoration involves the original location, floor area, and height. Such restoration must comply with the current provisions of the Boulder County Land Use Code other than 4-800 (also see Nonconforming Structures & Uses, Article 4-1002(D) and 4-1003(F)).

        **a.**    Such restoration must be commenced within six months after the date on which the structure was damaged or destroyed, or a latent defect discovered and completed within one year after the date on which the restoration commenced. This limitation may be extended in the case of extenuating circumstances as determined by the Director.

        **b.**    The provisions of this Section 4-802(B)(3) shall not apply to substantial improvements to structures in the Floodplain Overlay District as provided for in Section 4-400 of this Code.

    **4.**    Development on subdivided land with a final plat approved after February 22, 1994, unless the plat approval otherwise requires Site Plan Review for the lots *(8/12/99)*

    **5.**    Development in approved Neighborhood Conservation Overlay Districts to the extent that the approved Neighborhood Conservation plan covers the relevant site plan review criteria detailed in this Article 4-806

**C.**    Site plan review may be waived for the following circumstances if the Land Use Director determines that there is no potential for any significant conflict with the criteria listed in Article 4-806 of this Code:

    **1.**    Any increase in floor area on a parcel up to 2,000 square feet

        **a.**    This provision includes instances in which site plan review would be required because the floor area exceeds the cumulative threshold specified in this section A(2) and B(2)(a)

    **2.**    In the plains, any accessory structure less than 5,000 square feet

    **3.**    In the mountainous areas, any accessory structure less than 2,000 square feet

    **4.**    Any grading permit involving under 500 cubic yards of earthwork

    In considering a waiver determination, the Director shall notify adjacent property owners. The Director shall not issue the determination for seven days following such notification and shall consider any comments received by the public. (5/2/00)

    In waiving any requirement for site plan review as authorized under this section 4-802, the Director may impose written terms and conditions on the waiver as may be reasonably necessary to ensure that the regulatory basis for the waiver is not contravened once the subject use or construction is commenced.

**D.**    If the proposed permit or development requires Special Review, Limited Impact Special Review, Development Plan Review, Historic District Review (Section 4-114), or Subdivision Regulations or PUD Review, Subdivision Exemption, or Exemption Plat Review, the applicable Review process shall substitute for the site plan review process under this section. In any such combined review process, the standards in Section 4-806 shall be applied to the part of the proposal requiring site plan review. *(8/20/96)*





### 4-803 Pre-application Conference

A pre-application conference as defined in Section 3-201 shall be held prior to the submission of an application for site plan review.

### 4-804 Application and Submittal Requirements

A. Within four days of the time application is made, all proposed access points, driveways, wells, leach fields, cisterns, turn-out, turn-arounds, and at least four corners of the proposed structures must be visibly marked on the property with clearly labeled stakes. *(5/2/00)*

B. For the purpose of referring the project to applicable agencies, the applicant shall submit a minimum of five copies of the following information:

1. The application form available at the Land Use Department as specified in Section 3-202 of this Code.

2. A vicinity map clearly showing and identifying the general location and boundaries of the subject property prepared by using the 1:80,000 scale County Road Map base; and a location map clearly identifying the subject property and how to access it from the closest county right-of-way. This map must be of acceptable scale to show the names of all public roads.

3. Name of the proposed development or use and total number of acres.

4. A site plan at a scale which best conveys the conceptual aspects of the plan and allows for effective public presentation. This site plan must have the following elements:



a. Date of preparation, revision box, written scale, graphic scale, and north arrow (designated as true north)

b. Clearly identified boundary lines, corner pins, dimensions of the subject property, and distance of structures from property lines.

c. Location, and dimension of all structures, existing and proposed,

d. Parking areas, driveways, emergency turn-outs, and emergency turn-arounds will be shown, with locations and dimensions including all proposed grading for the property.

e. All roads, railroad tracks, irrigation ditches, fences, existing and proposed utility lines, and easements on or adjacent to the parcel.

f. Significant on-site features including, but not limited to: natural and artificial drainage ways, wetland areas, ditches, hydrologic features (with flooding limits based on information available through the County), aquatic habitat, geologic features (including slopes, alluvial fans, areas of subsidence, rockfall areas, USDA soil classification and landslide areas), vegetative cover, dams, reservoirs, excavations, and mines.

g. Location and size of leach field, sewer service lines, treatment facilities, well(s) and/or water lines to serve the proposed development.

h. (For mountainous area properties only) Existing and proposed topographic contours at maximum intervals of five feet for at least 50 feet around all proposed disturbances. The remainder of the site may show greater contour intervals (i.e. 20 foot intervals) or obtain contours from the area's U.S.G.S. topographic map.

i. Any Floodplain, 100 year Floodplain or Floodway located on the property as indicated in Article 4-400 of this code.

**Boulder County Land Use Code**

  **j.**  Any Natural Landmark or Natural Area along with a 250 foot buffer zone surrounding the landmark or area as shown on the Zoning District Maps of Boulder County. Significant Natural Communities, Rare Plant Areas or Riparian Corridors that are indicated in the Natural Resources Element of the Comprehensive Plan must also be included on the site plan.

  **k.**  The location and type of proposed exterior lighting.

 **5.** Four elevation drawings showing existing grade, finished grade, and height of the structure above existing grade. The location and dimensions of all windows must also be included on each of the elevations.

 **6.** Verification that the site is a legal building lot under this code and that legal access from a public road has been obtained.

**C.** The following information may be required to be submitted with a site plan application if the Director determines that such information is necessary to allow the site plan standards of 4-806 to be adequately evaluated:

 **1.** A detailed site plan of developed portions of the property presented at a larger scale than required in (B) above.

 **2.** Land survey data to identify the subject property including section corners and distance and bearing to these corners, quarter corners, township, range, etc.

 **3.** *(For non-mountainous portions of the county)* Existing and proposed topographic contours at maximum intervals of five feet for at least 50 feet around all proposed disturbances. The remainder of the site may show greater contour intervals (i.e. 20 foot intervals) or obtain contours from the area's U.S.G.S. topographic map.

 **4.** Location, width, and typical cross-section of all existing and proposed earthwork, including but not limited to: driveways, pedestrian paths, parking areas, and berms. This information may include earthwork calculations, grading plan, drainage plan, and/or geotechnical/soils reports. The Director may request that any or all of this information be certified by a Colorado registered Professional Engineer.

 **5.** Information regarding the use of ignition/fire resistant construction materials.

 **6.** Location of existing and proposed landscaping including a revegetation plan. The site plan shall illustrate the type, height, and/or caliper of the trunk of proposed plantings. All plantings will be specified by type and location.

 **7.** Location and results of soil percolation tests (County Health Department approval) where septic systems or similar systems are proposed. This may include site approval and discharge permit, if required, as issued by the Colorado Department of Health.

 **8.** Erosion control and revegetation plan.

 **9.** The areas of all development in square feet and percentage of site, including total square feet of developed driveways, parking, and buildings.

 **10.** A development report addressing the standards in 4-806.

 **11.** A letter of verification of a search of Inventory of Cultural Resources from the State Historical Society, a report defining the archaeological or historical resources on the site (based on information available from the State Historic Preservation Officer) or the appropriate archeological field survey report.

 **12.** A Wildfire Mitigation Plan demonstrating the appropriate site location of structures, construction design and the use of ignition resistant building material, defensible space and fuel reduction around the structures, driveway

access for emergency vehicles, and an emergency water supply for fire fighting.

13. A control plan for undesirable plants.

14. A topographic survey certified by a Colorado Registered Surveyor or Professional Engineer.

15. Information regarding the type of glass used on the structure as it relates to reflectivity of sunlight and their emission of internal lighting.

16. A wildlife impact report meeting the requirements of Section 7-1700 of this Code. The requirement for a wildlife impact report shall not be construed to import the substantive requirements of Article 7-1700 into the site plan review process, but rather shall provide additional information for the County to apply the site plan review criteria to the facts of the application. *(1/26/99)*

## 4-805 Review by the Director

A. Once an application for SPR is filed, the Director shall promptly forward one copy of the application and supporting materials to the Transportation, Health, Parks and Open Space Departments, local fire district, and any other potentially affected agencies or organizations. The Director shall also post a sign on the property stating the site plan review docket number and the address and phone number of the Land Use Department. Referrals shall be returned to the Director no later than 18 days from date the application is filed.

B. Any determination by the Director to approve, conditionally approve, or deny a site plan application must be in writing and mailed or otherwise provided to the applicant no later than 28 days after the date on which the site plan application is filed. Once the determination is made, the Director shall also provide notice of the determination to all referral agencies and the adjacent property owners within 1500 feet of the property. If the Director fails to make a determination on the site plan application within this time period, the application as submitted shall be considered approved and the applicant's building permit shall be processed.

C. The Director may suspend the 28-day decision period required in subsection (B) above at any time during the 28-day period at the request of the applicant or whenever the Director determines that the application is not complete. The Director may deem the application incomplete, based on the application submittal requirements, at the Director's initiative or at the request of any or all referral agencies. In the event that the Director deems an application incomplete, the Director shall immediately notify the applicant of the shortcomings. Once the requested information has been provided, the application shall be deemed filed as of that date and the Director shall render a decision within 28 days. However, if the application is not completed within 6 months of the date of suspension, the Director may declare the application withdrawn. The 6 month time frame may be extended should the Director determine that circumstances beyond the control of the applicant prevent a timely completion of the application.

## 4-806 Site Plan Review Standards

A. All site plan review applications shall be reviewed in accordance with the following standards which the Director has determined to be applicable based on the nature and extent of the proposed development. When two or more of the standards listed below conflict, the Director shall evaluate the applicability and importance of each of the conflicting standards under the facts of the specific application and make a reasonable attempt to balance the conflicting standards in reaching a site plan decision.

1. The location of existing or proposed buildings, structures, equipment, grading, or uses shall not impose an undue burden on public services and infrastructure.

**Boulder County Land Use Code**

2. The height, size, location, exterior materials, color, and lighting of proposed structures shall be compatible with the topography, vegetation, and general character of the applicable neighborhood or surrounding area.

3. Plans for the proposed development have satisfactorily mitigated any geologic hazards, such as expansive soils, subsiding soils, questionable soils where the safe-sustaining power of the soils is in doubt, or contaminated soils, landslides, unstable slopes, rockfalls, and avalanche corridors, as identified in the Comprehensive Plan, or through the site plan review process.

4. The site plan shall satisfactorily mitigate the risk of wildfire both to the subject property and those posed to neighboring properties in the surrounding area by the proposed development. In assessing the applicable wildfire risk and appropriate mitigation measures, the Director shall consider the referral comments of the County Wildfire Mitigation Coordinator and the applicable fire district, and may also consult accepted national standards as amended, such as the 2003 Urban-Wildland Interface Code; NFPA / 80A, 299, 1231; 2003 International Fire Code; and the 2003 International Building Code.

5. The proposed development shall not alter historic drainage patterns and/or flow rates or shall include acceptable mitigation measures to compensate for anticipated drainage impacts.

6. The development shall avoid significant natural ecosystems or environmental features, including but not necessarily limited to riparian corridors and wetland areas, plant communities, and wildlife habitat and migration corridors, as identified in the Comprehensive Plan or through the site plan review process. Development within or affecting such areas may be approved, subject to acceptable mitigation measures and in the discretion of the Director, only if no other sites on the subject property can be reasonably developed, or only if reasonably necessary to avoid significant adverse impacts based upon other applicable site plan review criteria.

7. The development shall avoid flash flood corridors, alluvial fans, floodplains, and unique geologic, geomorphic, paleontological, or pedologic features, as identified in the Comprehensive Plan or through the site plan review process. Development within or affecting such hazards may be approved, subject to acceptable mitigation measures and in the discretion of the Director, only if no other sites on the subject property can be reasonably developed, or only if reasonable necessary to avoid significant adverse impacts based upon other applicable site plan review criteria.

8. The development shall avoid agricultural lands of local, state or national significance as identified in the Comprehensive Plan or through the site plan review process. Development within or affecting such lands may be approved, subject to acceptable mitigation measures and in the discretion of the Director, only if no other sites on the subject property can be reasonably developed, or only if reasonably necessary to avoid significant adverse impacts based upon other applicable site plan review criteria.

9. The development shall avoid significant historic or archaeological resources as identified in the Comprehensive Plan or the Historic Sites Survey of Boulder County, or through the site plan review process. Development within or affecting such resources may be approved, subject to acceptable mitigation measures and in the discretion of the Director, only if no other sites on the subject property can be reasonably developed, or only if reasonably necessary

to avoid significant adverse impacts based upon other applicable site plan review criteria.

10. The development shall not have a significant negative visual impact on the natural features or neighborhood character of surrounding area. Development shall avoid prominent, steeply sloped, or visually exposed portions of the property. Particular consideration shall be given to protecting views from public lands and rights-of-way, although impacts on views of or from private properties shall also be considered. Development within or affecting features or areas of visual significance may be approved, subject to acceptable mitigation measures and in the discretion of the Director, only if no other sites on the subject property can be reasonably developed, or only if reasonably necessary to avoid significant adverse impacts based upon other applicable site plan review criteria.

11. The development shall not cause unnecessary or excessive site disturbance. Such disturbance may include but is not limited to long driveways, over-sized parking areas, or severe alteration of a site's topography. Driveways or grading shall have a demonstrated associated principal use. *(9/17/02)*

12. Runoff, erosion, and/or sedimentation from the development shall not have a significant adverse impact on the surrounding area.

13. The development shall avoid Natural Landmarks and Natural Areas as designated in the Goals, Policies & Maps Element of the Comprehensive Plan and shown on the Zoning District Maps of Boulder County. The protection of Natural Landmarks and Natural Areas shall also be extended to their associated buffer zones. Development within or affecting such Landmarks or Areas may be approved, subject to acceptable mitigation measures and in the discretion of the Director, only if no other sites on the subject property can be reasonably developed, or only if reasonably necessary to avoid significant adverse impacts based upon other applicable site plan review criteria.

14. Where an existing principal structure is proposed to be replaced by a new principal structure, construction or subsequent enlargement of the new structure shall not cause significantly greater impact (with regard to the standards set forth in this Section 4-806) than the original structure. *(9/8/98)*

15. The proposal shall be consistent with the Comprehensive Plan, any applicable intergovernmental agreement affecting land use or development, and this Code.

## 4-807 Land Use Department Director's Determination

A. If the Director finds in reviewing a site plan application that the application meets the applicable standards set forth in Section 4-806, the Director shall approve the site plan and the applicant can continue to process the building permit.

B. If the Director finds that the application does not meet an applicable standard or standards, and that a reasonable basis for mitigation measures has been demonstrated, the Director shall approve the application with reasonable conditions that will avoid or acceptably mitigate the significant adverse impacts of the development. These conditions may include, but are not necessarily limited to the relocation or modification of proposed structures, additional landscaping, buffering, screening, relocation of access, or any other measures necessary to mitigate any significant impact or reduce hazards. The Director shall specify when the conditions shall be met.

C. If the Director finds that the application does not meet an applicable standard or standards and that a reasonable basis for mitigation measures has not been

**Boulder County Land Use Code**

demonstrated, the Director shall deny the application as proposed. The Director's determination must specify the reasons for the denial based upon the site plan review standards in Section 4-806.

D.  Once the Director issues a determination, the determination shall not be final, and no permit based upon the determination shall be issued, for 14 calendar days after the date of the determination, in order to allow time for the applicant to appeal, or for the Board of County Commissioners to call up the determination for further review, pursuant to Sections 4-808 and 4-809 of this Article. The Director's determination shall become final, and permits applied for in accordance with the determination may be issued, only after the expiration of this 14-day period, and only if the determination is not reviewed and acted upon by the Board of County Commissioners at a subsequent appeal or call-up hearing. *(11/21/2002)*

## 4-808 Applicant's Right of Appeal of a Conditional Approval or Denial

A.  If the Director denies a site plan or conditionally approves it with conditions to which the applicant objects the applicant shall be entitled to appeal the Director's determination to the County Commissioners.

B.  The applicant must file an appeal for this purpose with the Land Use Department in writing received no later than 14 calendar days after the date of the Director's determination.

C.  The Board shall review the Director's determination at a public hearing held as soon as practical after the appeal has been filed. Prior written notice of this hearing shall be provided to the applicant and to property owners within 1500 feet, and shall be published as part of the Board's agenda in a newspaper of general circulation in Boulder County. *(6/27/95)(9/27/01)*

D.  At the public hearing, the Board shall consider evidence related to the Director's determination which may be presented by the Director, the applicant, or interested members of the public. The Board shall not be limited in their review to the subject of the appeal, but may review any aspect of the site plan application. Based upon this evidence the Board may affirm the Director's decision, alter conditions, add new conditions, or reverse the Director's determination on any aspect of the site plan review application. In the case of denial of a site plan, the Board shall state its reasons for its decision based upon the site plan review standards in Section 4-806. No permit shall be issued until and unless the Board acts on the Director's determination at the public hearing, and approves the site plan. *(9/27/01)*

E.  Any site plan application submitted by a public utility or a power authority providing electric or natural gas service, which relates to the location, construction, or improvement of a major electrical or natural gas facility as contemplated by Section 29-20-108, C.R.S., as amended, shall be considered to be a "final application" under Section 29-20-108 on which final County action in the event of an appeal shall be required to be taken within 90 days after submission of the application, or the application under Section 29-20-108 is deemed approved. For purposes of this Subsection G., "submission" shall be considered to be the submission of a complete application as required by this Article 4, including but not limited with respect to compliance with any applicable notice requirements to the mineral estate owners and lessees constituting less than full fee title in the subject property as required by Article 65.5 of Title 24, C.R.S. *(9/27/01)*

**4-809 Board of County Commissioner's Review ("Call-up") of a Conditional Approval or Denial**



A.    No permit may be issued for 14 calendar days after the date of the Director's approval.

B.    At the same time written approval of the site plan is provided to the applicant, the Director shall forward to the Board a written statement including

1.    the location of the affected property,

2.    a description of the proposed development under the permit, and

3.    the basis for the Director's determination. The Director's determination can be either that there is no significant adverse impact, that the significant adverse impacts can be avoided or acceptably mitigated through the conditions imposed as specified in the statement, or that the application be denied for reasons specified in the statement.

C.    Upon receiving the Director's statement, and no later than 14 calendar days after the date of the approval, the Board may call the Director's determination up for review before the Board. The call-up generally shall be made by the Board at a public meeting convened within this 14-day period. However, if it is not practical for the Board to convene a public meeting for this purpose within the 14-day period, any member of the Board may authorize a call-up within the 14-day period, which call-up shall be effective provided that the Board subsequently ratifies the call-up at a public meeting held within a reasonable period of time after the 14-day period expires.*(11/26/02)*



1.    The Board shall review the Director's determination at a public hearing held as soon as practical after the Director's determination. Prior written notice of this hearing shall be provided to the applicant and to property owners within 1500 feet, and shall be published as part of the Board's agenda in a newspaper of general circulation in Boulder County.*(9/27/01)*

D.    At the public hearing, the Board shall consider evidence related to the Director's determination which may be presented by the Director, the applicant, or interested members of the public. The Board shall not be limited in their review to the subject of the call-up, but may review any aspect of the site plan application. Based upon this evidence, the Board may affirm the Director's decision, alter conditions, add new conditions, or reverse the Director's determination on any aspect of the site plan review application. In the case of denial of a site plan, the Board shall state its reasons for its decision based upon the site plan review standards in Section 4-806. No permit shall be issued until and unless the Board acts on the Director's determination at the public hearing, and approves the site plan.*(9/27/01)*

E.    Any site plan application submitted by a public utility or a power authority providing electric or natural gas service, which relates to the location, construction, or improvement of a major electrical or natural gas facility as contemplated by Section 29-20-108, C.R.S., as amended, shall be considered to be a "final application" under Section 29-20-108 on which final County action in the event of a call-up shall be required to be taken within 90 days after submission of the application, or the application under Section 29-20-108 is deemed approved. For purposes of this Subsection G., "submission" shall be considered to be the submission of a complete application as required by this Article 4, including but not limited with respect to compliance with any applicable notice requirements to the mineral estate owners and lessees constituting less than full fee title in the subject property as required by Article 65.5 of Title 24, C.R.S.*(9/27/01)*

**Boulder County Land Use Code**

### 4-810 The Effect of an Approved Site Plan

**A.**  A Site Plan Review determination or determination to waive site plan review shall expire 3 years from the date the application was approved. *(9/17/02)*

**B.**  The approval of a site plan by the Director does not result in the vesting of development rights, nor does it permit the violation of any county or state regulations to preclude the Building Official from refusing to issue a permit if the plans and specifications do not comply with applicable regulations, or that the work described in the application for the permit does not conform to the requirement of the Uniform Building Code as adopted by Boulder County.

### 4-811 Amendments to an Approved Site Plan *(9/27/01)*

**A.**  Any proposal to change a site plan approved under this Article shall require a request to the Land Use Department to determine whether the proposed change constitutes a substantial modification to the approved plan. If the Director determines that the change constitutes a substantial modification, no such change shall be allowed to proceed until an application to amend the approved site plan is filed with the Director and approval granted in accordance with this Article. The applicant or its successor may appeal the Director's decision to require an amended site plan to the Board of County Commissioners, provided that any such appeal shall be in writing and shall be filed with the Land Use Director no later than 30 days following the date of the Director's decision to require a site plan amendment.

### 4-900 Development Plan Review for Oil and Gas Operations

### 4-901 Purpose

**A.**  This development plan review is an administrative review procedure for oil and gas operations considered likely to significantly impact surrounding land uses and infrastructure needs and demands.

**B.**  Development plan review should occur before a full set of working drawings has been completed for submission as part of an application for a building permit. As part of the review procedure, the applicant may be required to submit a development plan indicating building siting and layout, buffering, landscaping, access, lighting, and other specific data.

**C.**  Development plan review is not intended to mandate aesthetics of design, nor is it intended to alter basic development standards such as floor area, density, height, and setbacks.

**D.**  Site Plan Review is not required for projects undergoing a Development Plan Review. *(7/2/98)*

### 4-902 Development Plan Review Requirements

**A.**  A development plan must be submitted for the site of any oil and gas operation proposed to be located in the unincorporated area of Boulder County. Development plan approval is required prior to the issuance of any County building permits, or associated grading, access, or floodplain development permits, for the oil and gas operation. However, oil and gas operations which may not require a building or other associated County permit must still obtain development plan approval under this Article.

### 4-903 Application

**A.**  The application for development plan review shall be made on application forms available at the County Land Use Department. Such forms shall have all spaces