IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Robert E. Blackburn, Judge

Civil Case No. 06-cv-00554-REB-BNB

ROCKY MOUNTAIN CHRISTIAN CHURCH, a Colorado nonprofit corporation

    Plaintiff,

and

UNITES STATES OF AMERICA, intervenor,

    Intervenor Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY, COLORADO,

    Defendant.

---

## ORDER DENYING DEFENDANT'S MOTIONS
## TO EXCLUDE OPINION TESTIMONY

**Blackburn, J.**

This matter is before me on the following motions: 1) **Motion To Strike or Exclude Proposed Expert Testimony of Rosi Koopmann and Request for Hearing** [#106], filed June 18, 2007; and 2) **Motion To Strike or Exclude Proposed Expert Testimony of Barry Himmelman, Rick Converse, and Luke Gentrup and Request for Hearing** [#107], filed June 18, 2007. The plaintiffs filed responses [#120 & #121] and the defendant filed replies [#128 & #129]. I deny the motions.[1]

### I. BACKGROUND

---

[1] The issues raised by and inherent to these Rule 702 motions are briefed adequately; thus, obviating the necessity for an evidentiary hearing, oral argument, or further briefing.

The lead plaintiff, the Rocky Mountain Christian Church, is a nondenominational Christian church. The church and four of its officials are the plaintiffs in this case. I will refer to the plaintiffs collectively as "the Church." This case concerns, *inter alia*, claims by the Church that the defendant, the Board of County Commissioners of Boulder County, Colorado (the Board) violated the plaintiffs' rights under the United States Constitution, the Colorado Constitution, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc - 2000cc-5.

The Church's main facility, which includes a school, is located in Boulder County, and the Church's property is regulated by the Boulder County Land Use Code. In 2004, the Church submitted a special use application to the Board. The application concerned the Church's plan to expand its facility from an existing set of structures consisting of 116,000 square feet to a set of structures totaling 240,800 square feet. The Board denied many of the requests made in the special use application. The Church's claims in this case are based on the Board's denial of the Church's special use application. Among other things, the Church claims that its special use application was given less favorable treatment than special use applications submitted by other comparable entities, both religious and non-religious. The Church claims also that the discretion that the Board is permitted to exercise under the land use code is overly broad.

In the two motions at issue here, the Board challenges the admissibility of the testimony of certain opinion witnesses who have been endorsed by the Church. The Board argues that some or all of the testimony of these witnesses should be excluded under Fed. R. Evid. 702.

## II. FED. R. EVID. 702

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The standards outlined in Rule 702 implicate, of course, the standards for admission of opinion testimony stated in the so-called *Daubert* trilogy. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The court's application of the standards of Rule 702 and the related cases is "a flexible and commonsense undertaking in which the trial judge is granted broad latitude in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable." *Smith v. Ingersoll-Rand Co.*, 214 F.3d. 1235, 1243 (10th Cir. 2000) (internal quotation and citations omitted).

Rule 702 requires that opinion testimony be the product of reliable principles and methods, and that an opinion witness has applied those principles and methods reliably to the facts of the case. The reliability analysis applies to all aspects of an expert's testimony, including the facts underlying the opinion, the methodology, and the link between the facts and the conclusion drawn. *Heller v. Shaw Indus.*, 167 F.3d 146, 155 (3d Cir.1999). Consequently, the court must make a practical, flexible analysis of the reliability of the testimony, considering relevant factors and the circumstances of the case. *See, e.g., Kumho Tire*, 526 U.S. at 149-52; *Heller*, 167 F.3d at 155.

3

### III. ANALYSIS

### A. Rosi Koopmann

Rosi Koopmann is a land use planner who assisted the Church with some of its land use applications to the Board, including the application that is the subject of this case. Between 1980 and 1995, Koopmann was employed by Boulder County, first as a Zoning Technician, then as a Planning Technician, and later as a Planner. Ultimately, Koopman was the Planning Manager of Boulder County. Since 1995, Koopman has worked as a planning consultant, including work as a consulting town planner for the Town of Lyons. *Response* [#121], filed July 11, 2007, Exhibit B (Koopman C.V.).

In her report, Koopmann states three opinions that are challenged by the Board. First, Koopmann opines that the Church's special use application was treated differently by the Board as compared to certain other properties for which special use applications also were submitted. Second, Koopmann opines that the land use code does not, in certain respects, provide clear standards for determination of issues like those presented in the Church's application. Third, Koopman compares in her report certain land uses that are subject to less stringent review than are churches, and briefly compares the less stringent standard to the standard applicable to churches.

#### 1. Qualifications

The Board argues that Koopmann does not have the specialized education or experience that would qualify her to render an opinion on the three topics outlined above. The Board notes that Koopmann does not have any formal education in land use planning, that she never has testified as an expert witness, and that she has never authored a publication in the area of land use. The Board argues also that

4

Koopmann's C.V. does not indicate that she has studied or examined the issues of disparate treatment, drafting of land use codes, or treatment of religious land uses.

I conclude that Koopmann's knowledge, skill, experience, and training qualify her to render the opinions summarized above. Koopmann's long experience as a planner in and around Boulder County has given her specialized knowledge of the planning process, the land use code, and other relevant topics. The comparisons and observations she makes in her report are based directly on this specialized knowledge. To the extent that there may be gaps between the precise issues addressed by Koopman and her personal expertise or her personal experience, any such gaps go to the weight to be given to her opinions, and not to their admissibility. Koopmann's knowledge and experience are sufficient to provide the relevant trier of fact with helpful information on the issues that Koomann proposes to address. I find that under Rule 702 Koopmann is qualified to render the opinions stated in her report which are challenged in the defendant's motion.

## 2. Facts & Data, Reliable Principles

The Board argues also that Koopmann's opinions should be excluded because they are not based on sufficient data. In essence, the Board argues that Koopmann's opinions about differential treatment of the Church's special use application and other similar applications is based on comparisons of properties that are not similarly situated to the Church. In addition, the Board asserts that Koopmann did not consider all of the relevant facts in making her comparisons, and that, logically, the data she cites does not support her conclusions. The fact that some data may support comparisons and opinions different than those proposed by Koopmann is not fatal *per se* to the

admissibility of her opinions.  It is a rare circumstance when all available data supports one particular conclusion.

On this record, the existence of data that my be contrary to Koopmann's opinion is a circumstance that goes to the weight to be accorded her opinion by the fact finder, and not to the admissibility of her opinion.  Further, to the extent Koopmann failed to consider relevant data, that fact goes to the weight to be ascribed to her opinions, and not to their admissibility.  The Board's criticisms of Koopmann's data do not indicate that Koopmann had so little factual information that she could not form reasonably reliable opinions. Under these circumstances, vigorous cross examination and presentation of contrary evidence are the appropriate means for challenging the factual basis of Koopmann's opinions.

Understandably, the Board's arguments about the sufficiency of Koopman's facts and data tend to bleed into the Board's arguments concerning the reliability of the principles that Koopman says she applied in arriving at her opinions.  To a great extent, the Board argues that Koopman's application of principles and methods fails because she did not have enough data to apply the principles and methods.  I conclude that Koopman's opinions about differential treatment, the clarity of standards in the land use code, and particular limitations on religious uses by the Board all are based, in essence, on comparisons with comparators that are, at least in a basic sense, relevant. To the extent her comparisons are inaccurate, incomplete, or unfair, that fact goes to the weight to be ascribed to her opinions, and not to their admissibility.  Again, the record does not indicate that Koopman had so little basis for comparison that she could not form reasonably reliable opinions.

6

### 3. Conclusion

The proposed opinion testimony of Rosi Koopmann is admissible under Fed. R. Evid. 702.

### B. Barry Himmelman, Rick Converse, & Luke Gentrup

Barry Himmelman, Rick Converse, and Luke Gentrup are opinion witnesses endorsed by the Church to testify about construction delay damages allegedly suffered by the Church. Gentrup and Converse are associated with Pinkard Construction Company, which did an estimate for the Church's project in April, 2004. Gentrup and Converse later prepared an updated estimate, dated April, 2007, and a comparison of the cost of the project in 2007 versus 2004. *Response to motion to strike* [#120], filed July 11, 2007, Exhibit B (Gentrup report). Himmelman was hired by the Church as an independent consultant to review the construction cost estimates provided by Gentrup and to verify that the Gentrup report reasonably reflects labor and material costs as they existed in 2004, and as they existed in 2007.

In its response, the Church does not address the proposed testimony of Converse. Again, Converse signed the same report that Gentrup signed, and it appears that their report and proposed testimony are essentially the same. In its reply, the Board addresses Gentrup and Converse as presenting issues that are identical. I will address Gentrup and Converse as presenting identical proposed testimony.

### 1. Relevance

The Board argues that opinion testimony about construction delay damages is not relevant because such damages cannot be recovered under the RLUIPA. The Church does not dispute this contention, but argues that construction delay damages

7

can be recovered under their constitutional claims. This is correct, and the proposed opinion testimony about construction delay damages is relevant to the Church's constitutional claims.

In addition, the Board argues that the proposed opinion testimony concerning construction delay damages is not relevant because the opinions are based on a period of delay that is not relevant to the Church's claims. The Board notes that Gentrup's estimate of delay damages is based on the assumption that the Church's construction project, had it been approved by the Board, would have begun in June of 2004. The Board asserts that it had not reached a final decision on the Church's special use application as of June, 2004, and thus any claim that the final decision was improper had not accrued at that time. On this theory, the Board argues that the relevant period of delay must have begun sometime later than 2004.

A determination of precisely what period of delay is relevant to the Church's claims is a fact intensive determination that is, in the end, dependent on the presentation of evidence at trial. Considering the record as it stands, I conclude that the opinions of Himmelman, Gentrup, and Converse address a period of delay that is well within the realm of relevance, considering the Church's claims. To the extent a different period may be determined to be the appropriate period for a determination of construction delay damages, these witnesses can be queried about such a period and the weight to be given their opinions may be subject to challenge. These circumstances, however, do not make theses opinions irrelevant under Fed. R. Evid. 401.

## 2. Facts & Data

The Board argues that the opinions of Himmelman, Gentrup, and Converse should be excluded because they are not based on sufficient facts and data, and because they are not based on reliable principles. The Board mentions "reliable principles and methods" in a heading on page five of their motion. However, all of the Board's argument concerns flaws in the facts considered by these experts in developing their opinions. Therefore, I address the Board's motion only as a challenge to the sufficiency of the facts and data on which Himmelman, Gentrup, and Converse's opinions are based.

The Board argues that the comparison of the cost of all aspects of the Church's proposed project in 2004 with the cost of all aspects of the project in 2007 is based on three false premises: 1) that the Church had the resources to undertake a 36 million dollar project in 2004; 2) that the Church immediately would have built all aspects of its proposed expansion if the Board had approved the Church's plans; and 3) that the April, 2004, construction plans on which Gentrup made his estimate were the same as the plans submitted to the Board for approval. It is not disputed that the Church has considered building this project in phases, and there is some evidence that the Church may not have been able to finance the entire project in 2004. There also is some indication that the April, 2004, construction plans do not reflect exactly the plans for which the Church sought the Board's approval. These facts, however, do not fatally undermine the factual foundation of the opinions of Himmelman, Gentrup, and Converse.

Notably, the Gentrup / Converse report provides a breakdown of the cost of

9

various aspects of the project, including comparison of the 2004 versus 2007 costs of each aspect of the project. Particularly with this breakdown, it is reasonable to conclude that Himmelman, Gentrup, and Converse could make a reasonable cost comparison based on evidence that the project would have been phased in a certain fashion, or evidence that certain aspects of the project would have been eliminated. A determination about the likely timing and phasing of the project is fact intensive determination that is, in the end, dependent on the presentation of evidence at trial. In evaluating the admissibility of this opinion testimony, I cannot make an assumption about precisely what the evidence at trial will show. Rather, I must consider the range of possible evidence and admit opinion testimony that falls within that range. The proposed opinion Himmelman, Gentrup, and Converse readily falls within the range of evidence that may be presented at trial about the manner in which the Church would have executed this construction project.

Finally, as with Koopmann, the fact that Himmelman, Gentrup, and Converse may not have considered all relevant data goes to the weight to be ascribed to their opinions, and not to their admissibility. The Board's criticisms of Himmelman, Gentrup, and Converse's data do not indicate that these witnesses had so little factual information that they could not form reasonably reliable opinions. Gentrup, and Converse's report indicates that they had a plethora of relevant data, and Himmelman essentially confirms Gentrup, and Converse's conclusions, based on Himmelman's independent experience . Under these circumstances, vigorous cross examination and presentation of contrary evidence are the appropriate means for challenging the factual basis of these opinions.

### 3. Conclusion

The proposed opinion testimony of Barry Himmelman, Rick Converse, and Luke Gentrup is admissible under Fed. R. Evid. 702.

### IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the defendant's **Motion To Strike or Exclude Proposed Expert Testimony of Rosi Koopmann and Request for Hearing** [#106], filed June 18, 2007, is **DENIED**; and

2. That the defendant's **Motion To Strike or Exclude Proposed Expert Testimony of Barry Himmelman, Rick Converse, and Luke Gentrup and Request for Hearing** [#107], filed June 18, 2007, is **DENIED**.

Dated March 31, 2008, at Denver, Colorado.

**BY THE COURT:**

s/ Robert E. Blackburn
Robert E. Blackburn
**United States District Judge**