**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 06-cv-00554-REB-BNB

ROCKY MOUNTAIN CHRISTIAN CHURCH, a Colorado nonprofit corporation

    Plaintiff,

and

UNITES STATES OF AMERICA, intervenor,

    Intervenor Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY, COLORADO,

    Defendant.

---

**ORDER CONCERNING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

    This matter is before me on the **Defendant's Motion for Summary Judgment**
[#113], filed June 20, 2007.  The plaintiffs filed a response [#126] on July 25, 2007, and
the defendant filed a reply [#146] on August 16, 2007.[1]  In addition, the intervenor
plaintiff filed a response [#119] on July 11, 2007, addressing the constitutionality of the
Religious Land Use and Institutionalized Persons Act of 2000.  With the court's
permission, the plaintiffs also filed a surreply [#164] on January 14, 2008.  Finally, I

---

[1]  The issues raised by and inherent to the motion for summary judgment are fully briefed,
obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on
the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th
Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review
of documents submitted by parties).

note that the parties filed several notices of supplemental authority [#s 153, 156, 160, 161, and 165]. I grant the motion in part, and I deny it in part.

## I. JURISDICTION

I have subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a) (deprivation of federally protected rights and privileges), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). When resolving a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). In response to a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Scott v. Harris*, ___ U.S. ___, ___, 127 S.Ct. 1769, 1776 (2007) (citations omitted). In other words, summary judgment may be granted if the court concludes that no "rational trier of fact" could find

for the nonmoving party based on the showing made in the motion and response. *Id.*;
*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  FACTS

Many of the facts relevant to this case are not disputed.  This summary of the
facts is drawn from the plaintiffs' amended complaint [#25], filed May 12, 2006, and
from the evidence submitted by the parties in addressing the motion for summary
judgment.  References to paragraph numbers (¶ 1) are references to the amended
complaint.

The Rocky Mountain Christian Church is a nondenominational Christian church
founded in 1984 to serve the religious needs of people in the area of Niwot, Colorado.
The church and four of its officials are the plaintiffs in this case.  I will refer to the
plaintiffs collectively as "the Church."  The Church owns a 54.4 acre parcel of property
in unincorporated Boulder County.  The property was acquired in separate acquisitions
of 15 acres in 1984, 35 acres in 1994, and five acres in 2004.  The Church's property is
regulated by the Boulder County Land Use Code (the Code).  *Motion for summary
judgment* [#113], Exhibit L.  Under the terms of the Code, the property is located in an
Agricultural (A) zone district.   This designation has been effective since the Church
acquired the first parcel in 1984.  Prior to 1996, a church building of any size was a use
by right in the Agricultural (A) zone district.

In 1996, the Code was changed, and the Code now requires that any church
with an occupancy load of more than 100, or meeting certain other criteria, to obtain
special review from the Board of County Commissioners of Boulder County (the Board).
Since 1996, a church with an occupancy load of more than 100 cannot be developed in

any zone district in Boulder County as a use by right.  Rather, such a church must go through a discretionary review process known as special use review.  The Church alleges that the special use review process is lengthy and expensive.  The criteria for special use review are specified in Section 4-601 of the Code.  ¶ 77.  The Church claims the special use review criteria are unquantifiable and subjective.  ¶ 77.  Since the special use criteria were adopted, the Board has adopted formal policies, and has engaged in informal practices, that allow the Board to grant exemptions from the requirements of Section 4-601 of the Code.  The plaintiffs allege that, in making a determination as to whether to approve a use by special review, the Board engages in an individualized assessment of the proposed use and the property involved.  ¶ 83. The Church claims that the unquantifiable and subjective special use review criteria, and the Board's exemption policies and practices, give the Board unbridled discretion to approve or deny any application for use by special review.  ¶ 84.  Such standards, the Church alleges, create the danger that the Board may "impermissibly favor non-religious uses over religious uses, or favor one religion over another."  ¶ 84.

1997 Special Use Application - After the 1996 amendments to the Code, the Church's building became a non-conforming use.  In 1997, the Church filed an application for special use to make the Church's building an approved use.  In the same application, the Church sought authorization to begin operating a Christian school serving kindergarten through eighth grade students, with a maximum of 400 students.  The Church sought to build a two-story addition of about 54,000 square feet for administrative space and classrooms.  Finally, the Church sought to expand the seating capacity of the worship center from 997 to 1,380 people through interior

renovation. The Board approved the 1997 application, but limited the size of the school to 260 persons, serving kindergarten through fifth grade.

The existing Church building and all of the proposed expansion were contained on the fifteen acre parcel acquired by the Church in 1984. However, as a condition of approval, the Board required the Church to combine as one lot the fifteen acre parcel with the 35 acre parcel acquired by the Church in 1994. Further, the Board required the Church to enter into a development agreement that required the Church to grant to the county a fourteen acre conservation easement on the northern portion of the Church property.

2000 and 2002 Special Use Applications - Two additional applications for special use were filed the Church in 2000 and 2002, and both were approved by the Board. The 2000 special use approval authorized the Church to increase the size of the Church's storage building by 1,600 square feet, and authorized the addition of a sixth grade to the school. The 2002 special use approval authorized the addition of seventh and eighth grades, with a maximum of 120 students, and the installation of a temporary middle school building for those grades. Apparently, the resolution approving the 2002 application required the Church to remove the temporary buildings by the end of the 2005-2006 school year, and contemplated that an application for a permanent facility would be submitted by the Church. ¶ 94.

2004 Special Use Application - The application at issue in this case is the Church's 2004 special use application, which was submitted on April 14, 2004, and amended on October 6, 2004. *Motion for summary judgment* [#113], Exhibit A (Billingsley affidavit), p. 2 (describing Church's facility and 2004 Special Use

application).  When the application was filed, and currently, the approved use of the Church's property includes a Church with a 1,400 seat facility, a preschool for 20 children, a "mom's Day Out" program for up to 40 children, and the Rocky Mountain Christian Academy, serving kindergarten through eighth grades, with a maximum of 380 students.  Currently, the Church property includes a 106,000 square feet Church building, a 2,600 square feet maintenance building, and 7,200 square feet of temporary modular units for the Christian Academy.

In its 2004 special use application, the Church sought to expand its facilities from 116,000 square feet to 240,800 square feet.  *Billingsley affidavit*, ¶ 8.  The Church later modified its application to eliminate a proposed 12,000 square foot balcony addition to its sanctuary, reducing its request for additional seating from 1,000 to 150, and by eliminating a proposed 8,000 square foot basement addition.  ¶ 21.  The Church deleted also its request to increase the population of the Christian Academy from the currently permitted 380 students to 540 students, and modified other requests concerning parking, lighting, and a buffer zone on the western side of its property.  ¶ 21.  The Board denied the Church's application.  Additional facts relevant to particular claims are discussed below.

The Church's Claims - The Church claims that the county's conduct in processing the Church's application, and the county's denial of the Church's 2004 Special Use application, violated various provisions of the United States and Colorado constitutions.  The Church alleges that the county's actions discriminated both against religion, and between religions, by unreasonably limiting religious assemblies and institutions and structures within the county.  As part of these claims, the Church

alleges that the county has imposed a substantial burden on the Church's exercise of religion, and that the burden imposed does not serve a compelling governmental interest. The Church claims the county's actions abridge its constitutional rights of free exercise of religion, free speech, free association, assembly, and its right to petition. The Church alleges also that the county's actions violate the requirements of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc - 2000cc-5. Finally, the Church asserts state law claims under C.R.C.P. 57 and 106 in its First through Third Claims for Relief.[2]

In its motion for summary judgment, the defendant challenges the plaintiffs' fourth through sixteenth claims for relief, as stated in the Church's amended complaint. The eighteenth claim for relief was dismissed previously. *Order* [#98], filed March 30, 2007. The seventeenth claim for relief is a claim for an award of attorney fees under 42 U.S.C. § 1988. This claim is tied to the plaintiffs' claims under 42 U.S.C. § 1983 and under the RLUIPA, and the claim for attorney fees rises or falls with those claims.

## IV. FOURTH, FIFTH, & SIXTH CLAIMS FOR RELIEF - RLUIPA CLAIMS

### A. Legal Background of the RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc - 2000cc-5 is the latest Congressional response to a series of Supreme Court cases and Congressional legislation that define the legal protections accorded to religion. I summarized these developments in my order [#98], filed March 30, 2007, on the county's motion to dismiss. For the sake of clarity in this order, I again

---

[2] The Church's claims under C.R.C.P. 57 and 106, its First through Third Claims for Relief, are the subject of a separate motion for summary judgment filed by the Church. I will address and resolve that motion in a separate order.

will summarize those developments briefly.

In 1963, the Supreme Court decided *Sherbert v. Verner*, 374 U.S. 398 (1963). In *Sherbert*, the Court invalidated a state unemployment compensation rule that conditioned the availability of benefits on an applicant's willingness to work under conditions forbidden by the applicant's religion. Sherbert was a member of the Seventh-day Adventist Church and was discharged by her employer because she would not work on Saturday, the Sabbath day of her faith. *Id*. at 399. State unemployment officials found that Sherbert was not qualified for unemployment benefits because her refusal to accept a job that required her to work on Saturday amounted to a refusal to accept suitable work when offered. *Id*. The Supreme Court ruled that this finding violated Sherbert's free exercise rights:

> The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship.

*Id*. at 404. The Court held that governmental actions that substantially burden a religious practice must be justified by a compelling governmental interest. *Id*. at 403.

In 1990, the Supreme Court decided *Employment Division v. Smith*, 494 U.S. 872, 879 (1990), which held that the Free Exercise Clause does not "relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" In *Smith*, the plaintiffs' religious use of peyote resulted in their dismissal from their employment. The state of Oregon concluded that the use of peyote was misconduct, and that this basis for dismissal from employment

8

disqualified the plaintiffs from receipt of Oregon unemployment compensation benefits. The *Smith* Court refused to apply the *Sherbert* balancing test. *Smith*, 494 U.S. at 883-84. The Court noted that *Sherbert* and related cases involved systems of "individualized exemptions" that lent themselves to individualized governmental assessment of the reasons for a person's conduct. *Smith*, 494 U.S. at 884. The *Smith* Court concluded that *Sherbert* has been confined largely to the context in which it was decided, denial of unemployment compensation, and that the *Sherbert* rule does not apply to neutral laws of general applicability. *Smith*, 494 U.S. at 883 - 884.

In response to *Smith*, Congress enacted in 1993 the Religious Freedom Restoration Act (RFRA). 42 U.S.C. §§ 2000bb through 2000bb-4. The RFRA purported to codify the *Sherbert* test and to apply that test to all government acts that "substantially burden" religious exercise, even if the burden results from a rule of general applicability. *City of Boerne v. Flores*, 521 U.S. 507, 515 (1997). In *City of Boerne v. Flores*, 521 U.S. at 532 (1997), the Supreme Court held that the RFRA was unconstitutional as it applied to state and local governments. 521 U.S. at 532 - 536. The Court concluded that Congress had exceeded its authority under Section 5 of the Fourteenth Amendment when it passed RFRA. *Id.*

Under Section 5, the Court said, Congress has the authority to pass legislation to enforce constitutional rights. 521 U.S. at 518. In *City of Boerne*, the Court concluded that the RFRA "is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior. It appears, instead, to attempt a substantive change in constitutional protections." 521 U.S. at 532. For example, the Court concluded that the

RFRA would accomplish a "substantive alteration" of the holding in **Smith**.  521 U.S. at

534.  "Laws valid under **Smith** would fall under the RFRA without regard to whether

they had the object of stifling or punishing free exercise." **Id**.

## B.  RLUIPA Land Use Provision

The plaintiffs' Fourth, Fifth, and Sixth Claims for Relief are claims for violation of

the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.

§§ 2000cc - 2000cc-5.  There is little dispute that the RLUIPA was adopted in response

to the Supreme Court's partial invalidation in 1997 of the Religious Freedom

Restoration Act of 1993 in **City of Boerne v. Flores**." **Freedom Baptist Church v.**

**Township of Middletown**, 204 F. Supp. 2d 857, 860 (E.D. Pa. 2002).  Consistent with

its name, the RLUIPA focuses on two areas: 1) land use, and; 2) institutionalized

persons.  Only the land use provisions are at issue here.  The land use provision is

codified at 42 U.S.C. § 2000cc, which provides:

### § 2000cc - Protection of land use as religious exercise

(a) Substantial burdens

(1) General rule

No government shall impose or implement a land use regulation in a manner that
imposes a substantial burden on the religious exercise of a person, including a
religious assembly or institution, unless the government demonstrates that
imposition of the burden on that person, assembly, or institution–

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling
governmental interest.

(2) Scope of application

This subsection applies in any case in which–

(A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

(B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

(b) Discrimination and exclusion

(1) Equal terms

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

(2) Nondiscrimination

No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

(3) Exclusions and limits

No government shall impose or implement a land use regulation that--

(A) totally excludes religious assemblies from a jurisdiction; or

(B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

## C.   Fourth Claim for Relief

The plaintiffs' Fourth Claim for Relief is a claim for violation of § 2000cc(b)(1) and (b)(2) of the RLUIPA.  These provisions prohibit a government from imposing or implementing a land use regulation in a manner that treats a religious assembly or

institution on less than equal terms with a nonreligious assembly or institution, sub-section 2(b)(1), and from implementing or imposing a land use regulation that discriminates against any religious assembly or institution on the basis of religion or religious denomination, sub-section 2(b)(2).

Having reviewed carefully the record and the arguments of the parties, I find that there are a variety of contested issues of material fact relating to the plaintiff's claims under § 2000cc (b)(1) and (b)(2), as stated in the Fourth Claim for Relief. However, I note that the defendant raises an important issue concerning the scope of this claim, which issue should be resolved now. Section 22-32-124 of the Colorado Revised Statutes provides that public schools generally are exempt from county land use control, although this statute requires boards of education to conform to local rules to the extent feasible. According to the Church, the county has the ability to treat the Church at least as well as public schools are treated under this state statute. The Church argues that § 2000cc (b)(1) of the RLUIPA requires the county to treat the Church at least as well as public schools are treated under this state statute. I disagree.

Section 2000cc(b)(1) requires the county to treat the Church on equal terms with nonreligious assemblies or institutions. Here, there is no claim that the Code makes an explicit differentiation between the treatment to be accorded religious institutions and nonreligious institutions. Rather, the Church claims that the county has applied its facially neutral Code to the Church in a way that constitutes unequal treatment of the Church. In the context of such a claim, I agree with the analysis of the Eleventh Circuit in *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450

F.3d 1295 (11th Cir. 2006).  In **Primera Iglesia**, the court held:

> A plaintiff bringing an as-applied Equal Terms challenge must present
> evidence that a similarly situated nonreligious comparator received
> differential treatment under the challenged regulation. If a plaintiff offers
> no similarly situated comparator, then there can be no cognizable
> evidence of less than equal treatment, and the plaintiff has failed to meet
> its initial burden of proof. See 42 U.S.C. § 2000cc-2(b).

*Id*. at 1311.  The plaintiff church in **Primera Iglesia** sought to compare its treatment

when it was denied a zoning variance to the treatment given to a school that had

successfully applied to have its parcel re-zoned.  The **Primera Iglesia** court concluded

that comparison with the school could not provide a basis for the church's claim under

§ 2000cc (2)(b).  "Primera and the school are not similarly situated because, notably,

they sought markedly different forms of zoning relief, from different decision-making

bodies, under sharply different provisions of local law."  *Id*. at 1311.

The Church's efforts to use public schools as relevant comparators for the

purpose of its claim under § 2000cc (2)(b) presents a similar problem.  Public schools

are not similarly situated to the Church because, *inter alia*, land use by public schools is

controlled by provisions of law created by the State of Colorado, and not by the county.

Under that state law, land use decisions concerning public schools are made by

different decision-making bodies applying different standards.

I note also that interpreting RLUIPA to require that the Church be accorded the

same treatment as public schools, while entities other than public schools are not

entitled to such treatment, may create a conflict between RLUIPA and the

Establishment Clause of the First Amendment.  Such a reading of RLUIPA effectively

would exempt religious institutions from many land use regulations to which non-

religious institutions, other than public schools, are subject. Legislation that accords

such treatment to a church because it is a church readily could be read as having a primary effect of advancing religion and eliminating government neutrality toward religion in the area of land use. These circumstances would raise significant Establishment Clause concerns. *See, e.g., Lemon v. Kurtzman*, 403 U.S. 602 (1971); *Summum v. City of Ogden*, 297 F.3d 995, 1009 (10th Cir. 2002). If I can apply a reasonable construction to the statute that will avoid an unconstitutional construction of the statute, then I must apply the reasonable construction that avoids the unconstitutional construction. *Chapman v. U.S.*, 500 U.S. 453, 464 (1991).

The undisputed facts in the record demonstrate that public schools are not similarly situated comparators for the purpose of the Church's claim under § 2000cc(2)(b). Therefore, the county is entitled to summary judgment to the extent the Church seeks to base its § 2000cc(2)(b) claim, its Fourth Claim for Relief, on a comparison between the Church and public schools. Otherwise, I find that there are a variety of genuine issues of material fact relating to the plaintiff's claims under § 2000cc (b)(1) and (b)(2), as stated in the Fourth Claim for Relief.

### D. Fifth Claim for Relief

The plaintiffs' Fifth Claim for Relief is a claim for violation of § 2000cc (a) of the RLUIPA. This provision prohibits the imposition or implementation of a land use regulation when the regulation "imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden" on that institution is in furtherance of a compelling governmental interest, and is the least restrictive means of furthering that compelling governmental interest. Using First Amendment parlance, the Act subjects

any such land use regulation to strict scrutiny. The RLUIPA defines "religious exercise" to encompass "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," including "(t)he use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. § 2000cc-5(7). As the Tenth Circuit has noted, the term "substantial burden," as used in the RLUIPA, is to be interpreted by reference to the Religious Freedom Restoration Act of 1993. *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006). Having reviewed carefully the record and the arguments of the parties, I find that there are a variety of genuine issues of material fact relating to the plaintiff's claim under § 2000cc (a) of the RLUIPA, as stated in the Fifth Claim for Relief.

For the sake of clarity, I note that the county has argued that the Church's claim does not satisfy any of the so-called "jurisdictional hooks" provided in § 2000cc (a)(2). The jurisdictional hook provided in § 2000cc (a)(2)(B) states that § 2000cc (a) is applicable if the alleged substantial burden in question affects, or removal of that substantial burden would affect, interstate commerce. The Church's 2004 Special Use Application concerns a construction project that would cost tens of millions of dollars. Here, the Church challenges the county's denial of parts of the Special Use Application that form a significant portion of the construction project proposed in the application. Under these circumstances, I conclude that the undisputed facts in the record demonstrate that the Church's claim falls within the interstate commerce jurisdictional hook of § 2000cc (a)(2)(B).

### E.  Sixth Claim  for Relief

The plaintiffs' Sixth Claim for Relief is a claim for violation of § 2000cc (b)(3) of

the RLUIPA. This provision prohibits the imposition or implementation of a land use regulation that "totally excludes religious assemblies from a jurisdiction" or "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." The Church does not claim that religious assemblies are totally excluded from the jurisdiction. Rather, The Church claims that the county's action on The Church's 2004 Special Use Application constitutes unreasonable limitations on a religious assembly, institution, or structure.

Having reviewed carefully the record and the arguments of the parties, I find that there are a variety of genuine issues of material fact relating to the plaintiff's claim under § 2000cc (b)(3) of the RLUIPA, as stated in the Sixth Claim for Relief. Therefore, the defendant is not entitled to summary judgment on the Sixth Claim for Relief.

## V. SEVENTH & EIGHTH CLAIMS FOR RELIEF
## FREE EXERCISE OF RELIGION

In its Seventh and Eighth Claims for Relief, the Church alleges that the county has violated its right to free exercise of religion under the First Amendment of the United States Constitution, and under Article II, Section 4 of the Colorado Constitution. In its complaint, the Church alleges that the Religious Freedom Clause of the Colorado Constitution "is broader in its protection of religious profession and worship than the Free Exercise Clause." *Amended complaint* [#24], ¶ 204. However, the parties have analyzed the Seventh and Eighth Claims for Relief concurrently, and neither party has engaged in a detailed analysis of Article II, Section 4 of the Colorado Constitution.

The Church notes in its response to the motion for summary judgment that it is asserting only one facial challenge to the laws at issue here. *Response*, p. 28, n. 26.

This facial challenge, as stated in the Seventh Claim for Relief, is brought under the Free Exercise Clause of the First Amendment against the "Colorado land use statutes," the Boulder County Land Use Code, and the exemption policies and practices used by the Board of County Commissioners under the Code under the Free Exercise Clause of the First Amendment. *Amended complaint* [#25], ¶ 197. All of the Church's other challenges under both the United States and Colorado constitutions are as-applied challenges. *Response*, p. 28, n. 26.

## A. Facial Challenge

The Church's allegations in support of its facial challenge under the Free Exercise Clause are that "the Colorado land use statutes, the Code, and the Exemption Policies and Practices . . . on their face . . . are not neutral as between religious and secular assemblies and institutions." *Amended complaint*, ¶ 197.

> When a plaintiff alleges that a law or policy violates the First Amendment on its face, he must demonstrate that the challenged law either could never be applied in a valid manner or that even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it may inhibit the constitutionally protected [rights] of third parties.

*Marchi v. Board of Cooperative Educational Services of Albany*, 173 F.3d 469, 479 -480 (2nd Cir. 1999) (addressing facial challenge based on Free Speech Clause).

Not every regulation of religious conduct is subject to a free exercise challenge. In fact, many regulations that affect religious conduct are not subject to a free exercise challenge.

> (T)he free exercise clause does not prohibit Congress and local governments from validly regulating religious conduct. Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief. Thus a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional

challenge.

***Grace United Methodist Church v. City of Cheyenne***, 451 F.3d 643, 649 (10th Cir.

2006) (quotations and citations omitted).

> (T)he defect of lack of neutrality applies primarily to those laws that *by their terms* impose disabilities on the basis of religion (*e.g.*, a law excluding members of a certain sect from public benefits . . .); whereas, the defect of lack of general applicability applies primarily to those laws which, though neutral in their terms, through their design, construction, or enforcement target the practices of a particular religion for discriminatory treatment . . . .

***Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah***, 508 U.S. 520, 557 (1993)

(Scalia, J., concurring) (citations omitted; emphasis in original).

> There are, of course, many ways of demonstrating that the object or purpose of a law is the suppression of religion or religious conduct. To determine the object of a law, we must begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face. A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context.

***Id.***, 508 U.S. at 533. "(L)and use regulations, i.e., zoning ordinances, are neutral and

generally applicable notwithstanding that they may have individualized procedures for

obtaining special use permits or variances." ***Grace United Methodist Church***, 451

F.3d at 651 (internal quotation omitted).

In this case, the Church has not cited any language in the laws it is challenging

that "refers to a religious practice without a secular meaning discernable from the

language or context." The Church cites no evidence in support of its facial challenge

indicating that the Code's procedures for obtaining special use permits or variances

are, on their face, indicative of a procedure that suppresses religion or religious

conduct. There is no evidence in the record that indicates that the county enacted the

Code with the purpose of restricting or suppressing the free exercise of religion.

*Grace*, 451 F.3d at 653.  Similarly, the Church has not cited any provisions in §22-32-124 of the Colorado Revised Statutes that supports the Church's claim that this statute is discriminatory on its face or that it is so broad that it may suppress religion or religious conduct.  On their face, the rules stated in this statute and in the Code are neutral in terms of their treatment of religion.

In previous briefing, the Church has indicated that its facial challenge is based also on a claim that the special use provisions of the Code vest the county with unbridled discretion to approve or deny special use permits for religious organizations. *Response to Motion To Dismiss Amended Complaint* [#43], filed July 31, 2006, p. 17. This argument targets section 4-601 of the Code, which describes the standards and conditions for special use permits.  *Motion for summary judgment* [#113] (Code), p. 18. The criteria outlined in section 4-601 do give the Board discretion, but I conclude that the discretion provided in section 4-601 is, on its face, guided and not unbridled. Therefore, I conclude, as a matter of law, that the Code is, on its face, a set of neutral rules of general applicability.  Therefore, the defendant is entitled to summary judgment on the Church's facial challenge to the Code under the Free Exercise Clause of the First Amendment.

## B.  As Applied Challenge

The fact that the Code is, on its face, a set of neutral rules of general applicability does not end the inquiry under the Free Exercise Clause:

> The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination. The Clause "forbids subtle departures from neutrality," ***Gillette v. United States***, 401 U.S. 437, 452, 91 S.Ct. 828, 837, 28 L.Ed.2d 168 (1971), and "covert suppression of particular religious beliefs," ***Bowen v. Roy, supra***, 476 U.S., at 703, 106 S.Ct., at 2154 (opinion of Burger, C.J.). Official action that targets religious

19

conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked, as well as overt. "The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders." *Walz v. Tax Comm'n of New York City*, 397 U.S. 664, 696, 90 S.Ct. 1409, 1425, 25 L.Ed.2d 697 (1970) (Harlan, J., concurring).

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993).

Here, the Church claims that the special use provisions of the Code were applied to the Church's 2004 Special Use application in a manner that effectively discriminates against the Church because of its religion, and which improperly limits its rights to free exercise of religion. Having reviewed carefully the record and the arguments of the parties, I find that there are a variety of genuine issues of material fact relating to the plaintiff's as applied claims under the Free Exercise Clause of the First Amendment and under Article II, Section 4 of the Colorado Constitution.

## VI.  NINTH & TENTH CLAIMS FOR RELIEF - FREE SPEECH

In its Ninth and Tenth Claims for Relief, the Church alleges that the county has violated its right to free speech under the First Amendment of the United States Constitution, and under Article II, Section 10 of the Colorado Constitution.  In its complaint, the Church alleges that the Free Speech Clause of the Colorado Constitution "is broader in its protection of speech and expressive conduct than the Free Exercise Clause." *Amended complaint* [#25], ¶ 218.  However, the parties have analyzed the Ninth and Tenth Claims for Relief concurrently, and neither party has engaged in a detailed analysis of Article II, Section 10 of the Colorado Constitution. These claims are not facial challenges to the Code, but are as applied challenges to the Code as it was applied to the Church's 2004 Special Use application.  Having

reviewed carefully the record and the arguments of the parties, I find that there are a variety of genuine issues of material fact relating to the plaintiff's as applied claims under the Free Speech Clause of the First Amendment and under Article II, Section 10 of the Colorado Constitution.

## VII.  ELEVENTH & TWELFTH CLAIMS FOR RELIEF - PETITION

In its Eleventh and Twelfth Claims for Relief, the Church alleges that the Board has violated its right to petition under the First Amendment of the United States Constitution, and under Article II, Section 24 of the Colorado Constitution.  These claims are based on the Church's assertion that it filed its 2004 Special Use application and asked that it be processed in accordance with the RLUIPA.  This effort was, the Church asserts, an exercise of its right to petition the government under the above-cited constitutional provisions.  The Church claims that the Board retaliated against the Church by threatening to sue the Church in federal court, and then by suing the Church in federal court.  Following the Board's consideration of the Church's 2004 Special Use application, including consideration of the requirements of the RLUIPA, the Board filed a declaratory judgment action in this court seeking a declaratory judgment that the Board's decision on the Church's application did not violate the RLUIPA.  ***Board of County Commissioners v. Rocky Mountain Christian Church***, Civil Action No. 06-cv-00486-MSK, filed March 17, 2006.  The Church claims the threat and the lawsuit were undertaken by the Board to retaliate against the Church for the Church's efforts to have its 2004 Special Use application heard.

To establish this claim, the Church must demonstrate that 1) the Church exercised its right to petition the government; 2) the Board's declaratory judgment suit

caused the Church to suffer an injury that would chill a person of ordinary firmness from continuing to exercise his or her right to petition the government ; and 3) the Board's decision to file the declaratory judgment suit was substantially motivated by a desire to retaliate against the Church for its exercise of its right to petition. ***Worrell v. Henry***, 219 F.3d 1197, 1212 - 1213 (10th Cir. 2000); ***Mimics, Inc. v. Village of Angel Fire***, 394 F.3d 836, 847 - 848 (10th Cir. 2005). Only the third element, retaliatory motive, is disputed. I conclude that the Church has not submitted evidence on which a reasonable fact finder could infer that the Board filed its lawsuit against the Church with a retaliatory motive .

Again, the Church asked the Board to consider the requirements of the RLUIPA in resolving the Church's 2004 Special Use application. It is undisputed that the Board considered the requirements of the RLUIPA and that the Board concluded that it could not determine precisely what the RLUIPA requires. *Motion for summary judgment* [#118], Exhibit M, ¶ 733 - 735. The Board then passed a resolution in which it said that

> the Board recognizes that it is not the final or even the appropriate arbiter of the applicability of [RLUIPA] to its decision on the Docket, and thus determines that it is prudent and justified to authorize the County Attorney to file a declaratory judgment action in Federal District Court, to confirm whether the Board's decision on the Docket complies with the mandates of this Act . . .

*Motion for summary judgment* [#118], Exhibit N, p. 4. The Board also determined that

> if a final judicial ruling on this question determines that the Board's decision does not comply with the mandates of the federal Religious Land Use and Institutionalized Persons Act, the Board will conduct appropriate proceedings to modify its decision accordingly.

*Id*. This resolution was executed by commissioners Ben Pearlman, Thomas Mayer, and Will Toor.

The Board then filed its declaratory judgment action in this court seeking a declaratory judgment that the Board's decision on the Church's application did not violate the RLUIPA. *Board of County Commissioners v. Rocky Mountain Christian Church*, Civil Action No. 06-cv-00486-MSK, filed March 17, 2006. Ultimately, that case was dismissed "on prudential grounds in favor of resolution of the same issues" in the present case. *Board of County Commissioners v. Rocky Mountain Christian Church*, Civil Action No. 06-cv-00486-MSK, order [#10], filed March 19, 2007.

The Board argues that there is no evidence in the record that would support a finding by a reasonable fact finder that the Board filed the declaratory judgment action for the purpose of retaliating against the Church's exercise of its right to petition. The Church cites the evidence summarized in Section C.2. of its response [#126] as evidence of the Board's retaliatory motive. This evidence includes 1) the fact that the Church's 2004 Special Use application largely was denied; 2) statements by one or more members of the planning commission, which apparently is an advisory commission to the Board; 3) a statement by a former commissioner; 4) the fact that the Board sought clarification of the RLUIPA question by filing a suit in federal court rather than pursuing Colorado's process for reviewing quasi-judicial decisions; and 5) various procedures used by various county officials in processing the Church's special use applications. The Church relies also on a comment made by Commissioner Mayer after he had watched a video of the Church's Sunday school program. Commissioner Mayer, whose father was a Sunday school superintendent, said after watching the video that "My father would be rolling over in his grave." *Response* [#126], Exhibit 5, p. 16.

Most of this evidence says nothing about the motivation of the Board, consisting of commissioners Pearlman, Mayer, and Toor, in determining that a declaratory judgment action should be filed.  Even if I assume that comments of former board members and other county officials reflect animus toward the Church, I properly cannot attribute such alleged animus to the members of the Board absent some additional evidence indicating a connection between these alleged comments and one or more Board members.  There is no such evidence in the record.  The comments of others, in short, do not evidence the motivations of the three board members.  Even if there were evidence of some connection, the alleged comments and the other alleged actions by the Board are, at best, only obliquely relevant to the decision to file the declaratory judgment action.  Finally, Commissioner Mayer's comment concerning his father's reaction to a video of a Sunday school session says little or nothing about Commissioner Mayer's reaction to the video, and says nothing about Commissioner Mayer's motive in determining that a declaratory judgment action should be filed to resolve the RLUIPA issues presented by the Church.

Finally, I note that the Board sought in the declaratory judgment action nothing more than a determination of how the RLUIPA applied to the Board's resolution of the Church's special use application.  *Motion for summary judgment* [#113], Exhibit O (complaint in declaratory judgment action).  Although the Church was required to respond to the suit, it is difficult to view a suit that seeks nothing more than answers to acutely relevant questions as punitive or retaliatory.

In short, the evidence in the record could not lead a rational trier of fact to find that the Board filed the declaratory judgment case in retaliation for the Church's

exercise of its right to petition under the First Amendment of the United States Constitution, or under Article II, Section 24 of the Colorado Constitution.  Absent some evidence supporting the contention that the Board filed the suit with a retaliatory motive, the Board is entitled to summary judgment on this claim.

## VIII.  THIRTEENTH & FOURTEENTH CLAIMS FOR RELIEF - ASSOCIATION & ASSEMBLY

In its Thirteenth and Fourteenth Claims for Relief, the Church alleges that the Board has violated its right to peaceably assemble and to associate with others of similar belief under the First Amendment of the United States Constitution, and under Article II, Section 24 of the Colorado Constitution.  Having reviewed carefully the record and the arguments of the parties, I find that there are a variety of genuine issues of material fact relating to the plaintiff's claims for violation of the Church's right to peaceably assemble and to associate with others of similar belief under the First Amendment of the United States Constitution, and under Article II, Section 24 of the Colorado Constitution.

## IX.  FIFTEENTH & SIXTEENTH CLAIMS FOR RELIEF - EQUAL PROTECTION

In its Fifteenth and Sixteenth Claims for Relief, the Church alleges that the Board has violated its right to equal protection of the law under the Fourteenth Amendment to the United States Constitution and under Article II, Section 25 of the Colorado Constitution.  Having reviewed carefully the record and the arguments of the parties, I find that there are a variety of genuine issues of material fact relating to the plaintiff's claims for violation of their right to equal protection of the law under the Fourteenth Amendment to the United States Constitution and under Article II, Section

25 of the Colorado Constitution.

## X.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendant's Motion for Summary Judgment** [#113], filed June 20, 2007, is **GRANTED** to the extent the plaintiffs seek to base their § 2000cc(2)(b) claim, their Fourth Claim for Relief, on a comparison between the Church and public schools;

2.  That the **Defendant's Motion for Summary Judgment** [#113], filed June 20, 2007, is **GRANTED** to the extent the plaintiffs assert in their Seventh Claim for Relief a facial challenge to the Colorado land use statutes, Boulder County Land Use Code, and the exemption policies and practices used under the Boulder County Land Use Code;

3.  That the **Defendant's Motion for Summary Judgment** [#113], filed June 20, 2007, is **GRANTED** as to the Eleventh and Twelfth Claims for Relief;

4.  That the **Defendant's Motion for Summary Judgment** [#113], filed June 20, 2007, is **DENIED** otherwise.

Dated March 31, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**