**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 06-cv-00554-REB-BNB

ROCKY MOUNTAIN CHRISTIAN CHURCH,

      Plaintiff,

and

UNITED STATES OF AMERICA,

      Intervenor Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY, COLORADO,

      Defendant.

---

**ORDER DENYING DEFENDANT'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

**Blackburn, J.**

    This matter is before me on the **Defendant's Renewed Motion for Judgment as a Matter of Law** [#279][1] filed January 5, 2009. Both the plaintiff and the intervenor plaintiff filed responses [#286 & #293] and the defendant filed replies [#290 & #298]. I deny the motion.

## I.  STANDARD OF REVIEW

    Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a)(1). When

---

[1] "[279]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

reviewing a motion under Rule 50(a), I must review the record "taken as a whole" and I "must draw all reasonable inferences in favor of the nonmoving party . . . ." **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133, 150 (2000). I may not make credibility determinations or weigh the evidence. **Id**. Further, I must "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." **Id**. (internal quotation omitted). In short, the "standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same." **Id**. (internal quotations omitted).

## II. BACKGROUND

This case was tried to a jury from November 3 to November 19, 2008. At the conclusion of the trial, the jury returned verdicts in favor of the plaintiff, Rocky Mountain Christian Church (RMCC), on three claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc - 2000cc-5. Specifically, the jury found for the RMCC on the RMCC's claims under (1) RLUIPA's equal terms provision, § 2000cc(b)(1); (2) RLUIPA's substantial burden provision, § 2000cc(a); and (3) RLUIPA's unreasonable limitations provision, § 2000cc(b)(3)(B). The jury found in favor of the defendant on all other claims, including the RMCC's constitutional and RLUIPA claims alleging that the defendant, the Board of County Commissioners of Boulder County, Colorado (BOCC), had discriminated against the RMCC on the basis of religion.

At the close of the evidence, I deferred ruling on the BOCC's motion for judgment as a matter of law, as permitted under Fed. R. Civ. P. 50(b), and ultimately directed the BOCC to file its motion in writing, which it has done. In its present motion,

the BOCC re-asserts its motion for judgment as a matter of law as to the three RLUIPA claims on which the jury found in favor of the RMCC. The BOCC argues that the RMCC failed to present sufficient evidence at trial to support any of the three RLUIPA claims on which the jury found in favor of the RMCC. In addition, the BOCC argues that the three RLUIPA sections on which the RMCC's successful claims are based are unconstitutional as applied in this case. I address first the BOCC's arguments that the evidence was not sufficient to sustain the jury's finding in favor of the RMCC on the three RLUIPA sections cited above. *See, e.g., Jean v. Nelson*, 472 U.S. 846, 854 (1985) (prior to reaching constitutional questions, federal courts first must consider nonconstitutional grounds for decision).

I note that the BOCC has addressed its asserted affirmative defenses in its response to the RMCC's motion for permanent injunction [#270]. To ensure a comprehensive analysis of the claims on which the BOCC claims it is entitled to judgment as a matter of law, I address the BOCC's affirmative defenses in this order. I address the RMCC's motion for permanent injunction in a separate order.

### III. SUFFICIENCY OF THE EVIDENCE

### A. Equal Terms - § 2000cc(b)(1)

The equal terms provision of RLUPIA provides:

> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

42 U.S.C. § 2000cc(b)(1). The BOCC argues that the evidence presented at trial was not sufficient to sustain the jury's verdict in favor of the RMCC on the RMCC's claim under this subsection. I disagree.

The RMCC's claims in this case are based on the BOCC's partial denial of the RMCC's 2004 Special Use Application. In its 2004 special use application, the RMCC sought to expand its facilities from 116,000 square feet to 240,800 square feet. The Church later modified its application to eliminate a proposed 12,000 square feet balcony addition to its sanctuary, reducing its request for additional seating from 1,000 to 150, and by eliminating a proposed 8,000 square feet basement addition. The Church deleted also its request to increase the population of its school from 380 students to 540 students and modified other requests concerning parking, lighting, and a buffer zone on the western side of its property. The BOCC denied most, but not all, of the RMCC's Special Use Application. Hereafter, I will refer to the BOCC's decision on the RMCC's 2004 special use application as the denial of the application.

> A plaintiff bringing an as-applied Equal Terms challenge must present evidence that a similarly situated nonreligious comparator received differential treatment under the challenged regulation. If a plaintiff offers no similarly situated comparator, then there can be no cognizable evidence of less than equal treatment, and the plaintiff has failed to meet its initial burden of proof.

***Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County***, 450 F.3d 1295, 1311 (11th Cir. 2006). The BOCC argues that the RMCC did not establish a sufficient evidentiary basis for a reasonable jury to conclude that the RMCC was treated on less than equal terms as compared to the Dawson School, the one similarly situated secular comparator advanced by the RMCC. The BOCC argues that the Dawson School is similarly situated to the RMCC, for the purpose of the equal terms claim, only if the evidence demonstrates that the special use applications of both entities have the same effect on the purposes or objectives of the special use criteria in the Boulder Land Use Code. The Land Use Code is the primary source of the land use regulations

applied in this case, although there are other relevant sources that were discussed at trail.

The BOCC notes that the BOCC's denial of the RMCC's 2004 special use application hinged on the application of three criteria. The BOCC concluded that the RMCC's proposal 1) was not in harmony with the character of the neighborhood and was not compatible with the surrounding area; 2) was not in accordance with the Comprehensive plan because it constituted intensive development on rural land, and on agricultural lands of national importance; and 3) would result in an over-intensive use of land and excessive depletion of natural resources, namely agricultural lands. *Defendant's Motion for Summary Judgment* [#113], filed June 20, 2007, Exhibit N (BOCC Resolution 2006-23) (this exhibit also was admitted at trial). The BOCC contends that the evidence at trial showed that the special use application of the Dawson School differed from the RMCC application in several respects:

> 1) The RMCC proposed to expand its facilities by about 124,000 square feet and to add over 500 parking spaces, while the Dawson school proposed to add about 72,600 square feet and relatively few parking spaces.
>
> 2) The RMCC proposed a massive complex of large connected buildings, totaling about 240,000 square feet, while the Dawson School proposed multiple small buildings.
>
> 3) The visual impact of RMCC's proposed development would be greater than the existing visual impact of the expansion of the Dawson School, which was approved in 1996.
>
> 4) The traffic that would be generated by RMCC, if it were permitted to build everything proposed in its 2004 application, would be ten times greater than the traffic generated by the Dawson School.
>
> 5) The BOCC notes that the RMCC is in an area known as the Niwot buffer zone, and the Dawson School is not in the Niwot buffer zone.

In response, the RMCC argues that the evidence at trial showed that both the RMCC and the Dawson School are both in the agricultural zone district in the plains planning area of the Boulder County Comprehensive Plan. They both are outside of any designated community service area, and they both sought approval to expand an existing facility under Section 4-601 of the code. The size of the RMCC parcel and the Dawson School parcel were comparable, and the size of the facilities proposed by RMCC and the Dawson School were comparable. Rosie Koopmann, the plaintiff's expert witness, testified that both parcels were on lands designated as agricultural lands of national importance, both RMCC and the Dawson School sought approval for a double gymnasium of about the same size, and approval of significant classroom space. Further, Koopmann testified that the areas and neighborhoods surrounding the two facilities were comparable.

When the Dawson School's special use application was granted, it was permitted to expand its facilities to about 196,000 square feet, including a 30,000 square feet double gymnasium, a 20,000 square foot elementary school, and 11,000 square feet of classrooms. In contrast, the RMCC was denied its proposed double gymnasium and its proposed educational wing. Currently, RMCC's approved buildings include 116,000 square feet. After the RMCC modified its special use application, the RMCC sought to expand its facilities to about 220,000 square feet.

Generally, I conclude that the evidence presented at trial is amply sufficient to permit a reasonable finder of fact to conclude that the RMCC and the Dawson School were comparable for the purpose of applying RLUIPA's less than equal terms provision, 42 U.S.C. § 2000cc(b)(1). Some of the differences noted by the BOCC are minimized in importance because those differences do not appear to have played a direct role in

the BOCC's challenged decision.  With regard to traffic, I note that the BOCC's decision does not note the special use criteria concerning traffic as a basis for the decision, although it does note the number of proposed parking spaces and the fact that the RMCC draws people within a 7 mile radius.  BOCC Resolution 2006-23, p. 5.  Similarly, there is no regulatory provision noted by the BOCC that prefers multiple buildings to one large building.  Finally, there was sufficient evidence at trial to support a reasonable conclusion that the visual impact of the RMCC facility, after the proposed expansion, would be similar to or less than the visual impact of the current RMCC facility.  The evidence presented at trial provides a sufficient evidentiary basis for a reasonable jury to conclude that the Dawson School was similarly situated to the RMCC for the purpose of the RMCC's equal terms claim and for a reasonable jury to find in favor of the RMCC on this claim.

In its response to the **Plaintiff's Motion for Permanent Injunction** [#270], filed November 25, 2008, the BOCC argues that the verdict for the RMCC on the RLUIPA equal terms claim cannot stand because the BOCC's denial of the RMCC's 2004 special use application was rationally related to a legitimate governmental interest.  This is the standard applicable when a law that is both neutral and generally applicable is claimed to impose a burden on a person's exercise of religion.  In that context, the law need only be rationally related to a legitimate governmental interest to survive a free exercise challenge.  ***Grace United Methodist Church v. City of Cheyenne***, 451 F.3d 643, 649 (10th Cir. 2006) (quotations and citations omitted).  For reasons outlined in greater detail below, I conclude that the jury's verdict in this case demonstrates that the BOCC's decision was not an application of a law that is both neutral and generally applicable.  Therefore, the rationally related to a legitimate governmental interest

defense is not applicable to the RLUIPA equal terms claim.

## B. Substantial Burden - § 2000cc(a)

The substantial burden provision of RLUPIA provides, in relevant part:

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution–

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a).

### 1. Evidence of Substantial Burden on Religious Exercise

As the BOCC notes, the evidence at trial demonstrated that the RMCC has continued to engage in all aspects of its religious exercise after the BOCC's decision to deny partially the RMCC's 2004 special use application. The BOCC argues that limiting the scale of the RMCC's activities at its Boulder County location does not constitute a substantial burden. The RMCC argues that, for the purpose of § 2000cc(a), the denial of a church's expansion proposal can constitute a substantial burden even if religious activity continues at the site. I agree.

**Substantial Burden** - The term "substantial burden," as used in the RLUIPA, is to be interpreted by reference to the Religious Freedom Restoration Act (RFRA) of 1993, 42 U.S.C. §§ 2000bb through 2000bb-4. *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006). The RFRA purported to codify the test articulated by the Supreme Court in *Sherbert v. Verner*, 374 U.S. 398 (1963). In *Sherbert*, the Court invalidated a state unemployment compensation rule that

conditioned the availability of benefits on an applicant's willingness to work under conditions forbidden by the applicant's religion. Sherbert was a member of the Seventh-day Adventist Church and was discharged by her employer because she would not work on Saturday, which was the Sabbath day of her faith. *Id*. at 399. State unemployment officials found that Sherbert was not qualified for unemployment benefits because her refusal to accept a job that required her to work on Saturday amounted to a refusal to accept suitable work when offered. *Id*. The Supreme Court ruled that this finding violated Sherbert's free exercise rights:

> The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship.

*Id*. at 404. The Court held that governmental actions that substantially burden a religious practice must be justified by a compelling governmental interest. *Id*. at 403.

In 1990, the Supreme Court decided ***Employment Division v. Smith***, 494 U.S. 872, 879 (1990), in which the Court held that the Free Exercise Clause does not "relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" In ***Smith***, the plaintiffs' religious use of peyote resulted in their dismissal from their employment. The state of Oregon concluded that the use of peyote was misconduct, and that this basis for dismissal from employment disqualified the plaintiffs from receipt of Oregon unemployment compensation benefits. The ***Smith*** Court refused to apply the ***Sherbert*** balancing test. ***Smith***, 494 U.S. at 883-84. The Court noted that ***Sherbert*** and related cases involved systems of

"individualized exemptions" that lent themselves to individualized governmental assessment of the reasons for a person's conduct. *Smith*, 494 U.S. at 884. The *Smith* Court concluded that *Sherbert* has been confined largely to the context in which it was decided, denial of unemployment compensation, and that the *Sherbert* rule does not apply to neutral laws of general applicability. *Smith*, 494 U.S. at 883 - 884.

In response to *Smith*, Congress enacted the RFRA. The RFRA purported to codify the *Sherbert* test and to apply that test to all government acts that "substantially burden" religious exercise, even if the burden results from a rule of general applicability. *City of Boerne v. Flores*, 521 U.S. 507, 515 (1997). In *City of Boerne* , the Supreme Court held that the RFRA was unconstitutional as applied to state and local governments. 521 U.S. at 532 - 536. RLUIPA was enacted in response to *City of Boerne* and, again, for the purposes of the RLUIPA, the term "substantial burden" is to be given the broad meaning used in RFRA and in *Sherbert*.

**Religious Exercise** - The RLUIPA defines "religious exercise" to encompass "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," including "(t)he use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. § 2000cc-5(7). This definition is broader than the definition of "religious exercise" used under the RFRA and in constitutional jurisprudence under the First Amendment. Generally, the Supreme Court has limited free exercise claims to religious beliefs or practices that are central or fundamental to a person's religion. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah* 508 U.S. 520, 565 (1993); *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 662 (10th Cir. 2006).

Applying the definition of "substantial burden" and the broad definition of "religious exercise" applicable under RLUIPA, I conclude that the evidence presented at the trial of this case was sufficient to permit a reasonable fact finder to conclude that the land use regulation at issue here imposed a substantial burden on the religious exercise of the RMCC.  As the RMCC notes, the evidence was sufficient to support reasonable conclusions that

a. Overcrowding has caused the church to move from two longer services on Sunday to three shorter services thereby curtailing time for singing and praise, for weekly communion and personal reflection, and for the blessing of various speakers and missionaries during services.

b. Those attending the first two services can no longer witness public baptisms.

c. The Church has been prevented from holding most wedding ceremonies due to space constraints.

d. The space for funerals is limited and caskets are placed in hallways due to space constraints.

e. The church has no space to hold fellowship events large enough to accommodate the size of its congregation.

f. Time for fellowship between services has been curtailed.

g. Some adult Sunday school classes have been curtailed or eliminated completely and others are limited in size due to lack of space.

h. Some church groups have been forced to stop meeting altogether.

i. The sermon delivered by Pastor Ahlgrim has been shortened from 35 minutes per week to only 25 minutes per week.

j. The Church is prevented from highlighting its missionaries to its congregation.

k. Visiting teachers, ministers, artists, musicians and other speakers and performers cannot minister to the church body.

l. Growth of the Sunday School has curtailed lesson times for the children.

m. Sunday school classes and Christian educational space have reached capacity / lack of additional space limits the ministries that can be pursued and developed.

n. Certain Church programs, such as Women in the Word, adult Sunday School, and Mothers of Preschoolers, cannot accept new participants due to lack of space.

o. Some children's Sunday School classes must be held in hallways due to lack of space.

p. Space constraints inhibit growth and outreach to new members.

The BOCC cites some contrary evidence, but that evidence does not demonstrate that there was no legally sufficient basis for the jury in this case to conclude that the BOCC's decision imposed a substantial burden on the RMCC's exercise of religion.

## 2.  Jurisdictional Hooks

The BOCC argues that the jury's verdict in this case now mandates the conclusion that the RMCC's substantial burden claim does not satisfy the so-called "jurisdictional hooks" provided in § 2000cc (a)(2), which provides alternative jurisdictional bases for a substantial burden claim under RLUIPA.  Section 2000cc (a)(2) provides:

This subsection applies in any case in which–

(A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

(B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

Previously, I concluded that the RMCC's substantial burden claim satisfied the interstate commerce jurisdictional hook provided in § 2000cc (a)(2)(B). *Order Concerning Defendant's Motion for Summary Judgment* [#168], filed March 31, 2008, p. 15. This jurisdictional hook is satisfied if the alleged substantial burden in question affects, or removal of that substantial burden would affect, interstate commerce. As I noted previously, the RMCC's 2004 Special Use Application concerns a construction project that would cost tens of millions of dollars. The RMCC challenges the county's denial of parts of the Special Use Application that form a significant portion of the construction project proposed in the application. In my summary judgment order, I concluded that the undisputed facts in the record demonstrated that the RMCC's claim falls within the interstate commerce jurisdictional hook of § 2000cc (a)(2)(B).

In its present motion, the BOCC notes that the jury did not award RMCC any damages based on the BOCC's partial denial of the RMCC's special use application. The BOCC argues that this determination by the jury supports a reasonable inference that the jury concluded that the RMCC will not actually build the expansion it proposed in its special use application. If the RMCC will not actually build the expansion, then the denial of the special use application will not affect interstate commerce. I disagree that the suggested inference is proper or required. As RMCC notes, the lack of a damages award may be based on a conclusion by the jury that damages are too speculative. In this circumstance, almost no inference is safe. However, it is reasonable to conclude, based on the evidence presented at trial and after the jury's verdict, that it is more likely than not that the RMCC will build at least some significant portion of the construction project proposed in its special use application. That alone is sufficient to support the conclusion that removal of the substantial burden would affect commerce among the

several states. Even if the RMCC builds only ten percent of the proposed project, the construction project would affect interstate commerce.

As I discuss in Section IV.B.3, below, I conclude also that, considering the RMCC's allegations and the jury's verdicts in this case, the jurisdictional hook stated in § 2000cc (a)(2)(C) also is satisfied in this case.

### 3. BOCC's Affirmative Defense - Strict Scrutiny

The substantial burden provision of the RLUIPA includes an affirmative defense that has been asserted by the BOCC. 42 U.S.C. § 2000cc(a) provides that no government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a religious assembly or institution "unless the government demonstrates that imposition of the burden on that person, assembly, or institution– (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." This affirmative defense requires a determination of whether the interest asserted by the BOCC is a compelling governmental interest. That determination is a question of law that must be resolved by the court. *U.S. v. Harman*, 297 F.3d 1116, 1127 (10th Cir. 2002). Thus, following the trial, resolution of this affirmative defense is now ripe for my determination.

The affirmative defense codified at § 2000cc(a) replicates the strict scrutiny standard of constitutional law. *See, e.g., U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000). As the United States Supreme Court has noted aptly, "strict scrutiny leaves few survivors." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 455 (2002). The BOCC argues that the evidence presented at trial demonstrates that the BOCC's denial of the RMCC's special use application was in furtherance of a

compelling governmental interest and was the least restrictive means of furthering that interest.[2]  I disagree.

A compelling governmental interest is an interest of the highest order.  ***Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*** 508 U.S. 520, 546 (1993).

> There is, however, little guidance from the Supreme Court in determining what qualifies as a compelling interest. In ***Wisconsin v. Yoder***, the Court defined a compelling interest as "only those interests of the highest order." 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("[O]nly those interests of the highest order and not otherwise served can overbalance legitimate claims to the free exercise of religion."). In ***Sherbert v. Verner***, the Court stated that "[o]nly the gravest abuses, endangering paramount interest, give occasion for permissible limitation." 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (***quoting Thomas v. Collins***, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945)).

***U.S. v. Hardman***, 297 F.3d 1116, 1127 (10th Cir. 2002).  To establish a compelling governmental interest in the context of § 2000cc(a), the BOCC must demonstrate that a compelling governmental interest is at stake in this particular case, rather than relying on a compelling interest in general.  ***See, e.g., Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal***, 546 U.S. 418, 430 (2006) (applying RFRA); ***Westchester Day School v. Village of Mamaroneck***, 504 F.3d 338, 353 (2nd Cir. 2007) (applying RLUIPA, citing ***Gonzales***, 546 U.S. 418 (2006)).

The BOCC argues that the interests served by the Boulder County Land Use Code and the Boulder County Comprehensive Plan are compelling governmental interests.  The BOCC cites cases in which courts have concluded that land use and the enforcement of zoning regulations are compelling governmental interests.  However, the BOCC does not cite any evidence from the trial in this case, and I do not recall any

---

[2]  The BOCC addresses this issue in its response [#284] to the RMCC's motion for permanent injunction [#270].

such evidence being presented at trial, that shows that the particular issues presented by the RMCC's special use application implicated compelling governmental interests. Again, the primary reasons cited by the BOCC in its resolution denying the RMCC's special use application were lack of harmony with the character of the neighborhood, incompatibility with the surrounding area, incompatibility with the county's comprehensive plan, which limits intensive development on rural land, incompatibility with the designation of the RMCC's land as agricultural lands of national importance, and over-intensive use of land or excessive depletion of natural resources.

In the context of a strict scrutiny analysis, such interests generally have been found not to be compelling. *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1570 (11th Cir.1993) (deleterious effect of graphic communication on visual aesthetics and traffic safety not a compelling state interest of the sort required to justify content based regulation of noncommercial speech); *Midwest Media Property, L.L.C. v. Symmes Tp., Ohio*, 503 F.3d 456, 477 (2007) (aesthetic and safety concerns insufficient to satisfy strict scrutiny; citing *Dimmitt*); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Florida*, 493 F.2d 799, 808 (5th Cir. 1974) (consistency with master plan not compelling governmental interest). In the present case, I conclude that the interests asserted by the BOCC to justify its denial of the RMCC's special use application, although legitimate in many senses, do not constitute compelling governmental interests.

I note further that the jury's finding that the RMCC was treated on less than equal terms with the Dawson School also plays a role in the compelling interest analysis.

> Where government restricts only conduct protected by the First Amendment and fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort, the interest

given in justification of the restriction is not compelling. It is established in our strict scrutiny jurisprudence that "a law cannot be regarded as protecting an interest 'of the highest order' ... when it leaves appreciable damage to that supposedly vital interest unprohibited."

***Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah***, 508 U.S. 520, 546-547

(1993). It is important to note that the jury found in favor of the BOCC on both of the

plaintiff's claims alleging that the BOCC discriminated against the RMCC because the

RMCC is a church or is a religious institution. However, addressing the RMCC's

RLUIPA equal terms claim, the jury found that the BOCC treated the RMCC on less

than equal terms than the Dawson School. In general, similar interests were at stake in

the Dawson School's special use application and the RMCC's special use application.

The fact that the Dawson School received more favorable treatment in this context

tends to show that the interests asserted by the BOCC are not interests of the highest

order.

Addressing the least restrictive means aspect of the BOCC's strict scrutiny

affirmative defense, the RMCC argues that the BOCC did not present at trial evidence

that demonstrates that the BOCC used the least restrictive means to serve the BOCC's

claimed compelling interest when the BOCC denied most of the RMCC's special use

application. To satisfy its burden on this issue, the BOCC must show that it considered

and rejected less restrictive measures because the less restrictive measures were not

effective to serve the compelling interest at issue. ***Wygant v. Jackson Bd. of Educ.***,

476 U.S. 267, 280 n. 6. (1986). The BOCC argues that the evidence at trial showed

that the BOCC has approved all of the RMCC's special use applications, other than the

2004 application, and has permitted the RMCC's use of its property to the extent that

the RMCC now operates the largest church in Boulder County. Further, the BOCC

notes that it made a concerted effort to accommodate the RMCC's religious practice while still complying with the Land Use Code.  The RMCC argues that the record in this case does not show that the BOCC considered whether approval of some additional elements of the RMCC's special use application might serve to accommodate the RMCC's religious exercise while further minimizing the burden imposed by the Land Use Code without impairing significantly the interests served by the code.

I find and conclude that the record in this case does not include evidence that the BOCC considered alternatives in a way that shows that the BOCC focused on finding the least restrictive means of serving its asserted interests while minimizing to the greatest extent possible the burden imposed on the RMCC's religious exercise. Further, the evidence in the record does not demonstrate that the BOCC's partial denial of the RMCC's special use application was the least restrictive means of serving the BOCC's asserted interests.

### 4.  Conclusion

In sum, I conclude that the evidence presented at trial is sufficient to support the jury's verdict finding that the BOCC imposed a substantial burden on the RMCC's exercise of religion, as those terms are used in the RLUIPA.  Further, I conclude that the evidence and the jury's verdict demonstrate that the BOCC's challenged decision readily falls within the interstate commerce "jurisdictional hook" of § 2000cc (a)(2). Finally, I conclude that the evidence presented at trial is not sufficient to establish the strict scrutiny affirmative defense of  § 2000cc(a).

### C.  Unreasonable Limitations - § 2000cc(b)(3)(B)

The unreasonable limitations provision of RLUIPA, codified at § 2000cc(b)(3)(B), provides, in relevant part: "No government shall impose or implement a land use

regulation that . . . unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." The BOCC argues that the evidence presented at trial is not sufficient to support the jury's verdict on this claim because, according to the BOCC, the RMCC presented no more than a scintilla of evidence that the Commissioners' application of the Special Use criteria set forth in the Boulder Land Use Code unreasonably limits religious assemblies, institutions, or structures within the county. Because this portion of the RLUIPA refers to religious assemblies, institutions, or structures using plural rather than singular nouns, the jury in this case was instructed that it could find that a land use regulation

> "unreasonably limits" if the regulation, as applied or implemented, has the effect of depriving both the Rocky Mountain Christian Church and other religious institutions or assemblies of reasonable opportunities to practice their religion, including the use and construction of structures, within Boulder County.

Jury Instruction No. 12.

At trial, Rosi Koopman was qualified as an expert witness for the RMCC on the subject of planning and development. Koopman testified that she had worked for the Boulder County land use department for 12 years and that after leaving the county's employ, she had worked with several Boulder County churches, including RMCC, as a consultant concerning their efforts to negotiate the county's special use permit process. Asked if she had formed an opinion about the extent of the difficulties faced by a religious organization in obtaining land use approval in Boulder County, Koopman said she had formed an opinion. She opined that the county's regulations had become more difficult over the years, and that any church of any size must go through either a site plan review or a special use review. During her testimony she described various difficulties and limitations faced by various Boulder County churches with which she had

worked as a consultant on the churches' special use permits. On cross examination Koopman agreed that anyone in Boulder County who applies for permission to do something on their property faces the same regulations and limitations. She agreed also that she was not aware of any special use application by a church, other than RMCC, that had not been approved by the county. She testified also that it is common for a church to have conditions placed on their special use applications that reduce either the number of people permitted or the number of square feet permitted in a facility.

Applying the plain language of this portion of RLUPIA and the jury instruction quoted above, I conclude that the evidence was sufficient to support a reasonable conclusion by the jury that churches other than RMCC faced land use regulations in Boulder County that unreasonably limited the opportunity of those churches to practice their religion.

### D.  Conclusion

Applying the standard of review applicable under FED. R. CIV. P. 50, as detailed above, I find and conclude that the evidence presented in the trial of this case is sufficient for a reasonable jury to find in favor of the RMCC on its claims under (1) RLUIPA's equal terms provision, § 2000cc(b)(1); (2) RLUIPA's substantial burden provision, § 2000cc(a); and (3) RLUIPA's unreasonable limitations provision, § 2000cc(b)(3)(B).

### IV.  CONSTITUTIONALITY - AS APPLIED CHALLENGE

The BOCC argues that the RLUIPA is unconstitutional both facially and as applied. The BOCC asserted its facial challenge in its motion to dismiss [#34], filed June 30, 2006. I declined to address and resolve the facial challenge pretrial because

it was possible that the jury would find in favor of the BOCC on the RLUIPA claims.  In

that circumstance, there would be no need to address the constitutional challenge.  Of

course, the jury now has found against the BOCC on three of the RMCC's RLUIPA

claims.  In its present motion for judgment as a matter of law, the BOCC argues its as

applied challenge, addressing the three RLUIPA claims on which the jury found in favor

of the RMCC.  Addressing the BOCC's as applied challenge, I conclude that the three

RLUIPA  sections on which the jury found in favor of the RMCC are constitutional as

applied in this case.

Because I conclude that these RLUIPA sections are constitutional as applied in

this case, I do not address the BOCC's facial challenge.  A facial challenge is based on

the assertion "that no set of circumstances exists under which the [RLUIPA] would be

valid."  **U.S. v. Salerno**, 481 U.S. 739, 745 (1987).  Of course, my conclusion that the

RLUIPA is constitutional as applied in this case necessarily refutes the contention that

the RLUIPA is unconstitutional in all conceivable circumstances.

> In conventional constitutional litigation, it rarely (if ever) will be the case
> that a court, having upheld the constitutionality of a law in the context of
> the as-applied challenge before it, will proceed to strike the law in all of its
> applications based on hypothetical applications of the law to hypothetical
> individuals not before the court.

**Connection Distributing Co. v. Holder**  557 F.3d 321, 335 (6th Cir. 2009).

## A.  Establishment Clause

The BOCC argues that the equal terms, substantial burden, and unreasonable

limitations provisions of RLUIPA, as applied in this case, violate the Establishment

Clause of the First Amendment.  The BOCC asserts that these RLUIPA provisions

grant extraordinary privileges to RMCC which permit the RMCC to avoid the neutral and

generally applicable criteria of the Boulder County Land Use Code solely because the

RMCC is religious. As applied in this case, the BOCC contends, these RLUIPA provisions require the BOCC to violate the constitutionally mandated neutrality between religion and non religion.

Establishment Clause challenges are reviewed under the three part test established in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Although the *Lemon* test often has been criticized, the Tenth Circuit recently reiterated that the *Lemon* test is the controlling law. *Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1030 n. 14 (10th Cir. 2008). Under *Lemon*, a governmental action does not violate the Establishment Clause if (1) the action has a secular legislative purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive government entanglement with religion. *Lemon*, 403 U.S. at 612 - 613. "State action violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987). The Tenth Circuit interprets the purpose and effect prongs of the *Lemon* test in light of Justice O'Connor's endorsement test, stated in *Lynch v. Donnelly*, 465 U.S. 668, 687 - 694 (1984) (O'Connor, J., concurring). *Weinbaum*, 541 F.3d at 1030. The endorsement test asks whether a "reasonable observer, reasonably informed as to the relevant circumstances, would perceive the government to be acting neutrally." *Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1260 (10th Cir. 2005) (quotations omitted). Applying the *Lemon* test, I conclude that the equal terms, substantial burden, and unreasonable limitations provisions of RLUIPA, as applied in this case, do not violate the Establishment Clause.

1. Purpose

In deciding whether the government's purpose for a particular legislative enactment is improper under the Establishment Clause, a court must determine the

purpose of the legislation by examining the purpose "through the eyes of an objective observer, one who takes account of the traditional external signs that show up in the text, legislative history, and implementation of the statute . . . ." **Weinbaum**, 541 F.3d at 1031. A legislative enactment whose purpose is to "alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions" does not violate the legislative purpose prong of **Lemon**. **Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos**, 483 U.S. 327, 335 (1987). A court should not lightly attribute unconstitutional motives to the government, particularly when a plausible secular purpose can be discerned. **Weinbaum**, 541 F.3d at 1032.

Courts that have examined RLUIPA's land use provisions generally have concluded that these provisions have a secular purpose: to lift government-created burdens on private religious exercise. **See, e.g., Westchester Day School v. Village of Mammaroneck**, 504 F.3d 338, 355 (2nd Cir. 2007) (examining substantial burden provision); **Midrash Shepardi, Inc. v. Town of Surfside**, 366 F.3d 1214, 1240 - 1241 (11th Cir. 2004) (equal terms provision). In **Cutter v. Wilkinson**, the Supreme Court concluded that the institutionalized persons provisions of RLUPIA had the purpose of alleviating "exceptional government-created burdens on private religious exercise," and concluded that those provisions do not violate the Establishment Clause. 544 U.S. 709, 720 (2005). The land use provisions of RLUIPA carry the same purpose, and that purpose is proper under the legislative purpose prong of **Lemon**.

## 2. Principal or Primary Effect

The effect prong of the **Lemon** test "looks through the eyes of an objective observer who is aware of the purpose, context, and history" of the legislation in

question.  *Weinbaum*, 541 F.3d at 1031.  To satisfy *Lemon*, the law must have a principal or primary effect that neither advances nor inhibits religion.  *Amos*, 483 U.S. 336.  The fact that religious organizations are better able to advance their purposes because of the law in question does not mean necessarily that the law violates the Establishment Clause.  *Id*. at 336 - 337.  "A law is not unconstitutional simply because it *allows* churches to advance religion, which is their very purpose."  *Id*. at 337.  On this rationale, property tax exemptions for churches and exemption from the employment discrimination strictures of Title VII have been upheld when facing Establishment Clause challenges.  *Walz v. Tax Comm'n*, 397 U.S. 664 (1970) (property tax exemption); *Amos*, 483 U.S. 327 (Title VII exemption).  On the other hand, a law produces effects forbidden by the Establishment Clause if "the government itself has advanced religion through its own activities and influence."  *Amos*, 483 U.S. at 337.  The Establishment Clause prohibits government sponsorship of religion, financial support for religion, and the active involvement of the sovereign in religious activity.  *Id*.

The BOCC argues that the RLUIPA land use provisions, as applied in this case, effectively mandate preferential treatment of a religious entity over secular entities based solely on religion, and, thus, those provisions convey a message of government approval or endorsement of religion, in violation of the Establishment Clause.  The BOCC contends that the jury's verdict requires the BOCC to reverse its nondiscriminatory partial denial of the RMCC's special use application; thus, requiring the BOCC to give extraordinary benefits to the RMCC based solely on the fact that the RMCC is religious.

The BOCC's argument is based on its contention that the jury's verdict demonstrates that the jury found that the RMCC's special use application violated the

requirements of the Land Use Code.  The BOCC notes that the jury rejected both of

RMCC's claims alleging discrimination based on religion.  If the jury rejected the theory

of religious discrimination, the BOCC contends, then the jury must have concluded that

the BOCC rejected the RMCC's 2004 special use application for the reasons stated by

the BOCC; that is, because the RMCC's proposed uses did not comply with the Land

Use Code and its special use criteria.  If the jury's verdict establishes that the RMCC's

special use application was denied because it did not comply with the Land Use Code,

then the jury's verdict under RLUIPA will require the BOCC to exempt the RMCC from

the code because the RMCC is religious.

The limits of the protections afforded to a church under the Free Exercise Clause

are implicated in the BOCC's analysis.  Not every regulation of religious conduct is

subject to a free exercise challenge.  In fact, many regulations that affect religious

conduct are not subject to a free exercise challenge.

> (T)he free exercise clause does not prohibit Congress and local
> governments from validly regulating religious conduct.  Neutral rules of
> general applicability normally do not raise free exercise concerns even if
> they incidentally burden a particular religious practice or belief.  Thus a
> law that is both neutral and generally applicable need only be rationally
> related to a legitimate governmental interest to survive a constitutional
> [free exercise] challenge.

**Grace United Methodist Church v. City of Cheyenne**, 451 F.3d 643, 649 (10th Cir.

2006) (quotations and citations omitted).

> (T)he defect of lack of neutrality applies primarily to those laws that *by
> their terms* impose disabilities on the basis of religion (*e.g.*, a law
> excluding members of a certain sect from public benefits . . .); whereas,
> the defect of lack of general applicability applies primarily to those laws
> which, though neutral in their terms, through their design, construction, or
> enforcement target the practices of a particular religion for discriminatory
> treatment . . . .

**Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah**,  508 U.S. 520, 557 (1993)

(Scalia, J., concurring) (citations omitted; emphasis in original). Generally, "land use regulations, i.e., zoning ordinances, are neutral and generally applicable notwithstanding that they may have individualized procedures for obtaining special use permits or variances." *Grace United Methodist Church*, 451 F.3d at 651 (internal quotation omitted). Facially, the Boulder County Land Use Code and its special use criteria are neutral and generally applicable. The BOCC argues that the RLUIPA violates the Establishment Clause because the RLUIPA, as applied in this case, gives the RMCC an exemption from these otherwise permissible land use regulations.

The BOCC's analysis ignores a key aspect of the jury's verdict in this case. The jury found in favor of the RMCC on the RMCC's equal terms claim, concluding that the BOCC had imposed or implemented a land use regulation in a manner that treats the RMCC, a religious institution, on less than equal terms with a nonreligious assembly or institution, the Dawson School. Much of the BOCC's Establishment Clause argument is based on the contention that the RLUIPA, as applied in this case, requires the BOCC to favor religion rather than maintaining neutrality toward religion. However, the jury's equal terms verdict necessarily is based on the conclusion that the BOCC treated the RMCC on less favorable terms than a similarly situated secular comparator. Although the jury did not attribute a bias against religion to the BOCC, this unequal treatment of the RMCC is prohibited by the RLUIPA no matter what the underlying motive may be. Further, an objective observer who is aware of the purpose, context, and history of the RLUIPA could not conclude that the Act's equal treatment requirement causes the government itself to advance religion through its own activities and influence.

In the context of this case, the jury's verdicts in favor of the RMCC on its substantial burden and unreasonable limitations claims also readily satisfy the primary

effect prong of the *Lemon* test.  First, the jury's finding of unequal treatment may well have informed its findings that the BOCC also had imposed a substantial burden and unreasonable limitations on the RMCC.  If the equal treatment requirement is the lynchpin of the jury's verdicts, then an objective observer could not conclude that the RLUIPA, as applied in this case, causes the government itself to advance religion through its own activities and influence   Second, even if the finding of unequal treatment did not inform the jury's verdicts on the substantial burden and unreasonable limitations claims, an objective observer who is aware of the purpose, context, and history of the RLUIPA could not conclude that the Act's substantial burden and unreasonable limitations provisions cause the government itself to advance religion through its own activities and influence.  To the extent the jury's verdicts on these two claims may require the BOCC to relax regulations that otherwise might properly be enforced against the church, such a requirement does not cause  government itself to advance religion through its own activities and influence.  Like the property tax and Title VII exemptions noted above, an exemption from land use regulation that might be read into the jury's verdicts in this case cannot reasonably be seen, under applicable law, as government advancement of religion.

### 3.   Excessive Government Entanglement with Religion

The excessive entanglement prong of the *Lemon* test is related closely to the effect prong.  Addressing the entanglement prong of *Lemon*, the Supreme Court has said:

> (T)he factors we use to assess whether an entanglement is "excessive" are similar to the factors we use to examine "effect." That is, to assess entanglement, we have looked to the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and religious

authority.  Similarly, we have assessed a law's "effect" by examining the character of the institutions benefited ( e.g., whether the religious institutions were "predominantly religious"), and the nature of the aid that the State provided ( e.g., whether it was neutral and nonideological) . . . ."

*Agostini v. Felton*, 521 U.S. 203, 232-233 (1997) (internal quotations and citations

omitted).  The *Agostini* Court continued:

> Not all entanglements, of course, have the effect of advancing or inhibiting religion. Interaction between church and state is inevitable, see 403 U.S., at 614, 91 S.Ct., at 2112, and we have always tolerated some level of involvement between the two. Entanglement must be "excessive" before it runs afoul of the Establishment Clause. ***See, e.g., Bowen v. Kendrick***, 487 U.S., at 615-617, 108 S.Ct., at 2577-2579 (no excessive entanglement where government reviews the adolescent counseling program set up by the religious institutions that are grantees, reviews the materials used by such grantees, and monitors the program by periodic visits); ***Roemer v. Board of Public Works of Md.***, 426 U.S. 736, 764-765, 96 S.Ct. 2337, 2353-2354, 49 L.Ed.2d 179 (1976) (no excessive entanglement where State conducts annual audits to ensure that categorical state grants to religious colleges are not used to teach religion).

*Id*. at 233.

In *Lemon*, the Court observed that

> (o)ur prior holdings do not call for total separation between church and state; total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable. Fire inspections, building and zoning regulations, and state requirements under compulsory school-attendance laws are examples of necessary and permissible contacts. Indeed, under the statutory exemption before us in *Walz*, the State had a continuing burden to ascertain that the exempt property was in fact being used for religious worship. Judicial caveats against entanglement must recognize that the line of separation, far from being a 'wall,' is a blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship.

*Lemon v. Kurtzman*, 403 U.S. 602, 614 (1971).

The BOCC argues that the RLUIPA, as applied in this case, required the BOCC

to inquire whether the uses proposed by the RMCC constituted the exercise of religion.

In addition, the BOCC says it was required to inquire whether denial of the special use

application would burden substantially RMCC's religious exercise or deprive RMCC of reasonable opportunities to practice its religion. These required inquiries, the BOCC asserts, constitute an excessive entanglement of government with religion. I disagree.

No doubt, RLUIPA often will require a government body, like the BOCC, to evaluate whether the enforcement of land use regulations will burden religious exercise, will affect opportunities to practice religion, or has been administered equally between similarly situated religious and non-religious institutions. To a great extent, the U.S. Constitution also requires such evaluations. However, the assessments a government must make under RLUIPA do not require a pervasive monitoring of religious institutions or a detailed examination of those institutions that might support a claim of excessive entanglement. Rather, with inquires analogous to those found not to cause excessive entanglement in *Walz* and *Amos*, the BOCC can determine the nature of a religious institution and the extent to which land use regulations may impose an improper burden or unequally administered regulation on a religious institution. The inquires required by RLUIPA are not analogous to the detailed and pervasive inquires at issue in *Colorado Christian University v. Weaver*, inquiries that the Tenth Circuit found to violate the excessive entanglement aspect of *Lemon*. 534 F.3d 1245, 1261 - 1266 (10th Cir. 2008). In short, the relationship between the BOCC and religious institutions that is required under RLUIPA falls well within the acceptable relationship between government and religious organizations described in *Lemon* and does not constitute excessive entanglement of government with religion.

### 4. Conclusion

Thus, I conclude ultimately that, as applied in this case, the equal terms, substantial burden, and unreasonable limitations provisions of RLUIPA do not violate

the Establishment Clause of the First Amendment.

## B. Fourteenth Amendment

The BOCC challenges the constitutionality of the equal terms, substantial burden, and unreasonable limitations provisions of RLUIPA based on the contention that these provisions exceed Congress's enforcement powers under Section 5 of the Fourteenth Amendment.  This is so, the BOCC contends, because these provisions of RLUIPA, as applied in this case, effect substantive changes in constitutional protections and do not constitute proper remedial, preventative legislation designed to enforce constitutional protections.

To the extent the substantial burden provision of RLUIPA properly has been triggered under Congress's authority under the Commerce Clause, this argument is not applicable to the substantial burden provision.  However, the substantial burden provision of RLUIPA has also a jurisdictional hook that implicates § 5.  This "jurisdictional hook" provides that RLUIPA's substantial burden provision is applicable when

> the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

42 U.S.C. § 2000cc (a)(2)(C).  This jurisdictional hook is implicated in this case. Therefore, I address the BOCC's § 5 challenge as to the equal terms, substantial burden, and unreasonable limitations provisions of RLUIPA as applied in this case.

Section 5 of the Fourteenth Amendment grants to Congress the power to "enforce, by appropriate legislation," the provisions of the Fourteenth Amendment.  *U.S. Const. Amend. XIV, § 5*.  Of course, the Due Process Clause of the Fourteenth

Amendment incorporates the Free Exercise and Establishment Clauses of the First Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (the "fundamental concept of liberty embodied in the [Fourteenth Amendment's Due Process Clause] embraces the liberties guaranteed by the First Amendment"). Thus, Congress may act to enforce the First Amendment's religion clauses under § 5.

The § 5 enforcement power is limited, however.

> Congress' power under § 5, however, extends only to "enforc [ing]" the provisions of the Fourteenth Amendment. The Court has described this power as "remedial," *South Carolina v. Katzenbach*, supra, [383 U.S.] at 326, 86 S.Ct., at 817-818. The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States. Legislation which alters the meaning of the Free Exercise Clause cannot be said to be enforcing the Clause. Congress does not enforce a constitutional right by changing what the right is. It has been given the power "to enforce," not the power to determine what constitutes a constitutional violation. Were it not so, what Congress would be enforcing would no longer be, in any meaningful sense, the "provisions of [the Fourteenth Amendment]."

*City of Boerne*, 521 U.S. 507, 519 (1997).

A challenge to an enactment under § 5 requires an examination of three issues. First, a court must "identify with some precision the scope of the constitutional right at issue." *Bd. of Trustees of Univ. of Ala. v. Garrett* , 531 U.S. 356, 365 2001). Second, a court must determine if Congress identified a history and pattern of unconstitutional conduct that it sought to remedy with the challenged enactment. *Id*. at 964 - 965. Third, a court must determine if the legislation is "congruent" and "proportional" to the injury to be prevented or remedied. *City of Boerne*, 521 U.S. at 532 - 536; *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 81 (2000).

Examining the limits of Congress's § 5 powers, the Supreme Court found RLUIPA's predecessor, the Religious Freedom Restoration Act (RFRA) of 1993, to be

unconstitutional as applied to the states because RFRA far exceeded Congress's

power under § 5 of the Fourteenth Amendment. *City of Boerne*, 521 U.S. 507 (1997).

The Court concluded that the RFRA was not congruent and proportional to the

unconstitutional conduct that Congress sought to address.  Rather, the Court concluded

that RFRA

> is so out of proportion to a supposed remedial or preventive object that it
> cannot be understood as responsive to, or designed to prevent,
> unconstitutional behavior.  It appears, instead, to attempt a substantive
> change in constitutional protections.
>
> *   *   *   *
>
> [RFRA's] (s)weeping coverage ensures its intrusion at every level of
> government, displacing laws and prohibiting official actions of almost
> every description regardless of subject matter.

*City of Boerne*, 521 U.S. at 532.

1.  Scope of the Constitutional Right at Issue

The text of the RLUIPA shows clearly that, in passing RLUIPA, Congress sought

to protect the constitutional right of free exercise of religion and the right to equal

protection of the law in the context of land use decisions.  The Act's protections clearly

are directed at religious assemblies and institutions.  I agree with the conclusion of the

Eleventh Circuit that the RLUIPA is designed to protect the non-discrimination principles

of the Free Exercise and Establishment Clauses of the First Amendment, as well as the

Equal Protection Clause of the Fourteenth Amendment.  *Midrash Sephardi, Inc. v.*

*Town of Surfside*, 366 F.3d 1214, 1238 (11th Cir. 2004).  In short, the scope of the

rights at issue is the rights protected by the Free Exercise Clause of the First

Amendment, made applicable to the states under the Due Process Clause of the

Fourteenth Amendment and the Equal Protection Clause of the Fourteenth

Amendment, as those rights implicate land use decisions affecting religious assemblies

or institutions.

As discussed above with regard to the BOCC's Establishment Clause challenge, many regulations that affect religious conduct are not subject to a free exercise challenge. The Free Exercise Clause does not "relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Employment Division v. Smith*, 494 U.S. 872, 879 (1990). The *Smith* Court distinguished *Sherbert v. Verner*, 374 U.S. 398 (1963), and related cases because those cases involved systems of "individualized exemptions" that lent themselves to individualized governmental assessment of the reasons for a person's conduct. *Smith*, 494 U.S. at 884.

In sum,

the free exercise clause does not prohibit Congress and local governments from validly regulating religious conduct. Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief. Thus a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional [free exercise] challenge.

*Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006) (quotations and citations omitted).

(T)he defect of lack of neutrality applies primarily to those laws that *by their terms* impose disabilities on the basis of religion (*e.g.*, a law excluding members of a certain sect from public benefits . . .); whereas, the defect of lack of general applicability applies primarily to those laws which, though neutral in their terms, through their design, construction, or enforcement target the practices of a particular religion for discriminatory treatment . . . .

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 557 (1993) (Scalia, J., concurring) (citations omitted; emphasis in original). Generally, "land use

regulations, i.e., zoning ordinances, are neutral and generally applicable notwithstanding that they may have individualized procedures for obtaining special use permits or variances." **Grace United Methodist Church**, 451 F.3d at 651 (internal quotation omitted).

A law that is not generally applicable because its design, construction, or enforcement targets the practices of a particular religion for discriminatory treatment is subject to a free exercise challenge. If such a law imposes a substantial burden on the plaintiff's free exercise of religion, then the burden will not withstand a free exercise challenge unless the burden can be justified by a compelling governmental interest. **Sherbert**, 374 U.S. at 403. Generally, when the government must articulate a compelling governmental interest to justify its action, it also must accommodate that interest via the least restrictive means that can accommodate the interest. **See, e.g., Soskin v. Reinertson**, 353 F.3d 1242, 1247 (10th Cir. 2004).

Under the Equal Protection Clause, a law that discriminates among religions or discriminates between religion and non-religion may be subject to the strict scrutiny analysis. **See Colorado Christian University v. Weaver**, 534 F.3d 1245, 1256 (10th Cir. 2008) (government decisions that discriminate among religions subject to strict scrutiny; **citing Larson v. Valente**, 456 U.S. 228, 246 (1982)). However, when discrimination affecting free exercise rights is the primary issue, equal protection analysis takes a back seat. The Supreme Court has rejected attempts to invoke strict scrutiny under the equal protection clause, based on religious discrimination, when the challenged state action is not a violation of the Free Exercise Clause. **Locke v. Davey**, 540 U.S. 712, 721 n. 3 (2004). "(I)f a challenged program comports with the Free Exercise Clause, that conclusion wraps up the religious discrimination analysis. Thus,

rational basis scrutiny applies to any further equal protection inquiry." ***Eulitt ex rel.***

***Eulitt v. Maine, Dept. of Educ.***, 386 F.3d 344, 353-354 (1st Cir..2004).

2.  History and Pattern of Unconstitutional Conduct

With regard to RLUIPA's land use provisions, the provisions at issue in this case,

Congress compiled what it considered to be "massive evidence" of widespread

discrimination against religious institutions by state and local officials regarding

land-use decisions, and concluded that often these decisions frustrated a core aspect

of religious exercise –  the ability to worship.  See Joint Statement, 146 Cong. Rec.

S7774-75; H.R. Rep. No. 106-219, at 21-24.  Congress found also that while systems

of individualized land use assessments readily lend themselves to discrimination

against religious assemblies, it is difficult to prove discrimination in any particular case.

See 146 Cong. Rec. at S7775; H.R. Rep. No. 106-219, at 18-24.

> The hearing record demonstrates a widespread practice of individualized
> decisions to grant or refuse permission to use property for religious
> purposes. These individualized assessments readily lend themselves to
> discrimination, and they also make it difficult to prove discrimination in any
> individual case.  But the committees in each house have examined large
> numbers of cases, and the hearing record reveals a widespread pattern of
> discrimination against churches as compared to secular places of
> assembly, and of discrimination against small and unfamiliar
> denominations as compared to larger and more familiar ones.

146 Cong. Rec. at S7775.   "It is for Congress in the first instance to determine whether

and what legislation is needed to secure the guarantees of the Fourteenth Amendment,

and its conclusions are entitled to much deference."  ***Kimel***, 528 U.S. at 80 - 81

(internal quotations and citations omitted).

In its **Motion To Dismiss Amended Complaint** [#34], filed June 30, 2006, the

BOCC summarized well the arguments against the conclusion that Congress properly

identified and circumstantiated a history and pattern of unconstitutional conduct that

provides a sufficient basis for RLUIPA's land use provisions. Particularly in light of the deference that I must grant to the determinations of Congress in this arena, I conclude that Congress adequately identified and circumstantiated a pattern of unconstitutional conduct that provides an adequate foundation for the RLUIPA land use provisions at issue in this case.

### 3. Congruence and Proportionality

The key issue in the § 5 analysis in this case is whether RLUIPA's equal terms, substantial burden, and unreasonable limitation provisions are congruent and proportional to the problem Congress sought to address in passing the Act. Of course, if no pattern of unconstitutional conduct has been identified, as the BOCC has argued, then it is difficult to conclude that the legislative solution passed to solve a non-existent problem is congruent and proportional to the non-problem. To some extent, the BOCC's argument about congruence and proportionality is based on a contention that Congress did not identify and circumstantiate a problem that RLUIPA properly is designed to solve. Again, I conclude that Congress sufficiently identified a problem of land use decisions improperly limiting the free exercise of religion, and, thus, I reject the BOCC's congruence argument to the extent it is based on the contention that Congress did not properly identify a history and pattern of unconstitutional conduct. RLUIPA's land use provisions are not a solution in search of a problem.

Again, even when a problem has been identified and circumstantiated properly, the law designed to address the problem cannot significantly alter the meaning of the constitutional right in question, and the law must be congruent and proportional to the problem addressed. *City of Boerne*, 521 U.S. at 519. The BOCC argues that the RLUIPA's equal terms and unreasonable limitation provisions are improper under § 5

because they expand substantially the RMCC's rights under the Free Exercise and Equal Protection clauses.

The BOCC notes that the jury found in favor of the BOCC on all of the RMCC's claims under the Constitution. These claims included claims under the Free Exercise Clause, the Free Speech Clause, and for violation of the RMCC's constitutional right to freedom of association. Because the jury found in favor of the BOCC on all of RMCC's constitutional claims, the BOCC argues, the RLUIPA, as applied in this case, necessarily creates additional rights beyond those guaranteed by the Constitution, and the creation of those additional rights goes beyond Congress's § 5 powers.

I do not agree with the BOCC's argument that the jury's verdicts in this case necessarily demonstrate that RLUIPA creates rights greater than those provided in the Constitution. The jury's deliberations are inscrutable, and one readily can posit a scenario in which the jury's verdicts were based on a compromise or some other rationale that is not dependent on a conclusion that there were no violations of the Constitution in this case. In divining the rationale behind the jury's verdicts, few assumptions are safe. The jury's verdicts do not mandate the conclusion that RLUIPA, as applied in this case, creates rights for the RMCC greater than those provided in the Constitution.

The BOCC argues also that the RLUIPA grants rights that exceed substantially the protections provided to religious institutions and assemblies by the Free Exercise and Equal Protection clauses in the land use context. *Motion To Dismiss Amended Complaint* [#34], filed June 30, 2006, p. 22 - 24. The application of the Free Exercise and Equal Protection clauses in the context of land use decisions must be considered in evaluating this issue. If the RLUIPA substantially expands the RMCC's free exercise

or equal protection rights in this context, then Congress may have exceeded its § 5 powers in passing RLUIPA.

As in its Establishment Clause argument, the BOCC argues that the RLUIPA, as applied in this case, expands substantially the RMCC's rights in the land use context because the RLUIPA effectively requires the BOCC to grant the RMCC an exemption from land use regulations that otherwise would apply to the RMCC. Again, this argument is based on the contention that, absent the RLUIPA, the RMCC would have no valid constitutional basis to challenge the BOCC's denial of the RMCC's 2004 special use application.

Again, the BOCC's analysis ignores a key aspect of the jury's verdict in this case. The jury found in favor of the RMCC on the RMCC's equal terms claim, concluding that the BOCC had imposed or implemented a land use regulation in a manner that treats the RMCC, a religious institution, on less than equal terms with a similarly situated nonreligious assembly or institution, the Dawson School. This conclusion by the jury takes the BOCC's denial of the special use application outside of the protection accorded to land use laws that are viewed as neutral and generally applicable because this conclusion indicates that the Land Use Code, as applied to the RMCC, was not generally applicable. Again, "the defect of lack of general applicability applies primarily to those laws which, though neutral in their terms, through their design, construction, or enforcement target the practices of a particular religion for discriminatory treatment . . . ." ***Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah***, 508 U.S. 520, 557 (1993) (Scalia, J., concurring) (citations omitted; emphasis in original).

The fact that the jury found in favor of the BOCC on the RMCC's claims alleging discrimination on the basis of religion does not change this analysis. Unequal treatment

between similarly situated religious and non-religious comparators subjects the BOCC's decision to the non-discrimination principles of the Free Exercise and Establishment Clauses of the First Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment. The fact that the jury concluded that this unequal treatment did not arise from a motive to discriminate against religion does not somehow cleanse the finding of unequal treatment and thus shield the BOCC from the more rigorous analysis applicable when there is such unequal treatment.

In this case, the RLUIPA's requirement that similarly situated religious and non-religious assemblies or institutions be treated equally does not expand on the requirements of the religion clauses of the First Amendment or the Equal Protection Clause. Rather, the RLUIPA's requirement of equal treatment essentially parrots the requirements of the religion clauses and the Equal Protection Clause, as they are applied to religion. The unreasonable limitation provision of RLUIPA, viewed on its own limited terms, might be seen as a significant expansion of the rights of religious institutions and assemblies because the Free Exercise and Equal Protection clauses do not prohibit all limitations that might be labeled as "unreasonable", at least when those limitations are imposed by laws that are neutral and generally applicable. As applied in this case, however, the unreasonable limitations provision does not provide an improper expansion of the RMCC's rights. Most notably, the jury in this case easily could have concluded that the limitations at issue were unreasonable because they were imposed under a system that caused the BOCC to treat the RMCC on less than equal terms than the secular Dawson School. Applying this narrow but reasonable interpretation of the jury's verdicts, I conclude that the unreasonable limitations provision, as applied in this case, is congruent and proportional to the problem identified by Congress, does not

attempt to expand significantly the constitutional rights of the RMCC, and thus properly

falls within Congress's power under § 5.

Turning to the RLUIPA's substantial burden provision, I note first that, in view of

the RMCC's allegations and the jury's verdicts, the substantial burden "jurisdictional

hook" concerning land use regulations imposed via individualized assessments is

applicable in this case. Again, that jurisdictional provision provides that RLUIPA's

substantial burden provision is applicable when

> the substantial burden is imposed in the implementation of a land use
> regulation or system of land use regulations, under which a government
> makes, or has in place formal or informal procedures or practices that
> permit the government to make, individualized assessments of the
> proposed uses for the property involved.

42 U.S.C. § 2000cc (a)(2)(C). With the jury's finding of unequal treatment, the BOCC's

denial of the RMCC's special use application fairly can be viewed as a burden imposed

under a land use regulation that resulted in an individualized assessment of the

RMCC's proposed uses of its property.

In the context of such an individualized assessment, the standard of **Sherbert v.**

**Verner**, 374 U.S. 398 (1963), applies. If such a law imposes a substantial burden on

the plaintiff's free exercise of religion, then the burden will not withstand a free exercise

challenge unless the burden can be justified by a compelling governmental interest and

that interest is accommodated by the least restrictive means available. **Sherbert**, 374

U.S. at 403 (compelling interest); **See, e.g., Soskin v. Reinertson**, 353 F.3d 1242,

1247 (10th Cir. 2004) (compelling interest justification requires least restrictive means).

RLUIPA's substantial burden provision simply parrots this strict scrutiny standard.

Thus, in the context of this case, RLUIPA's substantial burden provision is congruent

and proportional to the problem identified by Congress, does not attempt to expand

significantly the constitutional rights of the RMCC, and thus properly falls within Congress's power under § 5.

In other contexts, RLUIPA's substantial burden provision could be read to apply the strict scrutiny standard to land use regulations that are, under applicable law, neutral rules of general applicability. In that circumstance, RLUIPA might be seen as attempting to expand significantly the constitutional rights of religious assemblies and institutions. However, this case does not present such circumstances.

I note also that RLUIPA does expand free exercise rights in one respect. As discussed above, RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," including the "use, building, or conversion of real property for the purpose of religious exercise. . . ." § 2000cc-5 (7). This definition of "religious exercise" is broader than the definition of "religious exercise" used in constitutional jurisprudence under the First Amendment. Generally, the Supreme Court has limited free exercise claims to religious beliefs or practices that are central or fundamental to a person's religion. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah* 508 U.S. 520, 565 (1993); *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 662 (10th Cir. 2006).

Congress's expansion of the term "religious exercise" in RLUIPA does not necessarily exceed Congress's power under § 5. Under § 5, Congress is authorized to enact "prophylactic" legislation that prohibits a "somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text," as long as there is proof of widespread unconstitutional conduct by the states, and the legislation is "congruent" and "proportional" to the injury to be prevented or remedied. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 81 (2000); *Tennessee v. Lane*, 541 U.S. 509,

526 - 531 (2004).  Here, Congress identified what it saw as a widespread problem of discrimination or unequal treatment of religious institutions in the context of land use decisions.  The expansion of the definition of religious exercise in RLUIPA relates directly to land use by religious institutions and eliminates the need to parse which aspects of a church's land use fall within the traditional definition of religious exercise and which do not.  This limited expansion of free exercise rights is proper under Congress's § 5 powers because it is limited, congruent, and proportional to the injury addressed by Congress in the land use provisions of RLUIPA.

### 4.  Conclusion

Having considered the scope of the constitutional rights at issue, the history and pattern of unconstitutional conduct identified by Congress, and the congruence and proportionality of RLUIPA's equal terms, substantial burden, and unreasonable limitation provisions, as applied in this case, I conclude that those provisions of RLUIPA are within Congress's power under § 5 of the Fourteenth Amendment.

I note that the BOCC also has challenged the RLUIPA as exceeding Congress's power under the Commerce Clause, which provides one of the jurisdictional hooks for the substantial burden provision.  *Motion To Dismiss Amended Complaint*, [#34], filed June 20, 2006, pp. 24 - 25.  Because I have found the relevant RLUIPA sections to be constitutional, as applied in this case, under Congress's § 5 powers, I decline to address this constitutional question.

> If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable. And so, as questions of federal constitutional power have become more and more intertwined with preliminary doubts about local law, we have insisted that federal courts do not decide questions of constitutionality on the basis of preliminary guesses regarding local law.

***Spector Motor Service v. McLaughlin***, 323 U.S. 101, 105 (1944) (Frankfurter, J.).

"This is a 'fundamental rule of judicial restraint,' which has received the sanction of time and experience." ***Zobrest v. Catalina Foothills School Dist.***, 509 U.S. 1, 14-15 (1993) (citing ***Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.***, 467 U.S. 138 (1984)).

### V. CONCLUSION & ORDER

For the reasons detailed in this order, I conclude under FED. R. CIV. P. 50 that the evidence presented at trial is sufficient to support the jury's verdicts in favor of the RMCC and against the BOCC under RLUIPA's equal terms, substantial burden, and unreasonable limitations provisions, as those provisions have been applied in this case. I conclude also that those provisions, as applied in this case, do not violate the Establishment Clause of the First Amendment and do not exceed Congress's enforcement powers under Section 5 of the Fourteenth Amendment.

**THEREFORE**, **IT IS ORDERED** that the **Defendant's Renewed Motion for Judgment as a Matter of Law** [#279], filed January 5, 2009, is **DENIED**.

Dated March 30, 2009, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge