## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Case No. 06-cv-00554-REB-BNB

ROCKY MOUNTAIN CHRISTIAN CHURCH, a Colorado nonprofit corporation

      Plaintiff,

and

UNITES STATES OF AMERICA, intervenor,

      Intervenor Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY, COLORADO,

      Defendant.

---

## ORDER CONCERNING MOTION FOR ATTORNEY FEES

---

**Blackburn, J.**

      This matter is before me on the plaintiff's **Motion for Attorneys' Fees and Non-Taxable Costs** [#311][1] filed May 8, 2009.  The defendant filed a response [#332], and the plaintiff filed a reply [#333].  I grant the motion in part and deny it in part.

## I. BACKGROUND

      This case concerned a zoning dispute between the plaintiff, Rocky Mountain Christian Church, and the defendant, the Board of County Commissioners of Boulder County, Colorado.  I will refer to the plaintiff as RMCC and to the defendant as the BOCC.  In 2004, RMCC submitted to the BOCC a special use application in which

---

[1]   "[#311]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

RMCC sought approval for an expansion of RMCC's facility in Boulder County.  When the special use application was submitted, the buildings at RMCC's Boulder County facility encompassed 116,000 square feet.  The facility included both church facilities and a school.  In the special use application, RMCC sought permission to expand its facilities to 240,800 square feet.  RMCC later reduced the size of the facility proposed in its application by about 20,000 square feet.  Ultimately, the BOCC denied the bulk of RMCC's special use application.

In this lawsuit, RMCC claimed that the BOCC's conduct in processing the special use application and the BOCC's denial of the special use application violated various provisions of the United States and Colorado constitutions.   RMCC alleged that the BOCC's actions discriminated both against religion generally and between religious denominations by unreasonably limiting religious assemblies, institutions, and structures within the county.  As part of these claims, RMCC alleged that the county had imposed a substantial burden on RMCC's exercise of religion and that the burden did not serve a compelling governmental interest.  RMCC claimed that the BOCC's actions abridged RMCC's constitutional rights of free exercise of religion, free speech, free association, assembly, and its right to petition.  RMCC alleged also that the BOCC's actions violated the requirements of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc - 2000cc-5.  Finally, RMCC asserted state law claims under C.R.C.P. 57 and 106.

After a jury trial, the jury returned a verdict in favor of RMCC against the BOCC on three of RMCC's claims under RLUIPA.  The jury found in favor of the BOCC on all other claims that were tried to the jury, including RMCC's other claim under RLUIPA

and RMCC's claims alleging violation of the United States Constitution and the

Constitution of the State of Colorado.  To the extent claims asserted by RMCC were

resolved by the court, RMCC did not prevail on those claims.  Although RMCC sought

an award of damages at trial, the jury did not award damages to RMCC.  However,

based on the jury's verdict  in favor of RMCC on the three successful RLUIPA claims, I

entered an order [#300] granting RMCC's motion for permanent injunction.  In that

order, I directed the BOCC to approve RMCC's special use application within 45 days of

the date of the order.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing

party" on a RLUIPA claim "a reasonable attorney's fee as part of the costs . . . . "  The

purpose of an award of attorney fees under § 1988 is to ensure "effective access of the

judicial process" for persons with civil rights grievances. ***Hensley v. Eckerhart***, 461

U.S. 424, 429 (1983); ***see also Gudenkauf v. Stauffer Communications, Inc.***, 158

F.3d 1074, 1081 (10th Cir. 1998); ***Metz v. Merrill Lynch, Pierce, Fenner & Smith***, 39

F.3d 1482, 1492 (10th Cir. 1994); ***Homeward Bound, Inc. v. Hissom Memorial Ctr.***,

963 F.2d 1352, 1355 (10th Cir. 1992).  The award of fees is a two-step process.

***Hensley,*** 461 U.S. at 429-430; ***Jane L. v. Bangerter***, 61 F.3d 1505, 1509 (10th Cir.

1995). First, I must determine whether an applicant is a prevailing party. ***Id.***   Second, I

must determine what is a reasonable fee. ***Id.***

Generally, plaintiffs "may be considered 'prevailing parties' for purposes of

attorney fees if they succeed on any significant issue in litigation which achieves some

of the benefit the parties sought in bringing the suit." *Hensley,* 461 U.S. at  433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir.1978)). Fees should be awarded to a plaintiff who is only partially successful, especially "where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." S.Rep. No. 94-1011, 94th Cong., 2nd Sess., reprinted in 1976 U.S. Code Cong. & Ad. News 5908, 5912.  "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.  Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of the award *vel non*."  *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-793 (1989) (cited in *Sole v. Wyner*, 551 U.S. 74, 82 (U.S. 2007)).

If a plaintiff is determined to be the prevailing party, then I must determine what fee is reasonable.  *Hensley*, 461 U.S. at 433, 103 S. Ct. 1933, 1939.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see also Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983).  This figure is the lodestar amount.  *Hensley,* 461 U.S. at 433; *Homeward Bound,* 963 F.2d at 1355.  Additional factors relevant to a determination of the amount of an award of attorney fees are discussed below.

### III.  PREVAILING PARTY

RMCC prevailed on significant claims in this case, three of its RLUIPA claims,

4

and achieved substantial benefit for RMCC.  The injunction requiring the BOCC to approve RMCC's special use application was one of the principal forms of relief sought by RMCC in this case.  Undoubtedly, the injunction constitutes a material alteration of the legal relationship of the parties in a manner which Congress sought to promote in both the RLUIPA and in § 1988.  The BOCC concedes that RMCC is the prevailing party in this litigation.  *Response* [#332] filed June 22, 2009, p. 1.  The BOCC contends, however, that a reasonable fee in this case does not include all of the fees incurred by RMCC.

## IV.  REASONABLE ATTORNEY FEES

### A.  Lodestar Amount

Again, any determination of reasonable attorney fees starts with calculation of the lodestar amount, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  The United States Court of Appeals for the Tenth Circuit has recognized the lodestar amount as a presumptively reasonable fee. ***Homeward Bound,*** 963 F.2d at 1355.  A "reasonable rate" is defined as the prevailing market rate in the community in question for an attorney of similar experience. ***Blum v. Stenson***, 465 U.S. 886, 895 (1984); ***Gudenkauf***, 158 F.3d at 1082; ***Metz,*** 39 F.3d at 1493.

RMCC was represented by the law firm of Otten, Johnson, Robinson, Neff, & Ragonetti (OJRNR) while is pursued its special use application with the BOCC and throughout the pendency of this case.   RMCC has submitted detailed documentation of OJRNR's billing to RMCC on this case.  The BOCC has not objected to either the

reasonableness of the time spent by OJRNR on this case or the hourly rates charged by OJRNR for its work on this case.  Having reviewed the hourly rates claimed and the time spent by OJRNR, I conclude that both figures are reasonable.  Multiplication of the hourly rates claimed by OJRNR by the number of hours spent by OJRNR on this case results in a lodestar for OJRNR's work  in the amount of 1,734,120 dollars.

While this case was being litigated, OJRNR consulted with The Becket Fund for Religious Liberty, a Washington, D.C. law firm.  The Becket Fund is a non-profit, public interest law firm that specializes in the law of religious freedom.  RMCC has submitted documentation of the Becket Fund's billing to RMCC on this case.  *Motion for attorney fees* [#311] filed May 8, 2009, Exhibit C, Appendix 1.  The total billing is 68,135.50 dollars.  The BOCC argues that the use of the Becket Fund's services was duplicative and unreasonable, that the hourly rates charged by the Becket Fund are not reasonable, and that certain time entries of the Becket Fund are not proper as part of an attorney fees award.

This case involved complex issues of constitutional law and the intersection of those issues with local land use law.  This complexity was enhanced by the overlay of the RLUIPA on those constitutional issues.  The RLUIPA is a relatively new act and the law concerning its application to particular factual situations is not well developed.  Given these circumstances, I find and conclude that RMCC's limited use of the specialized skills of the Becket Fund was reasonable.

The record indicates that the hourly rates charged by the Becket Fund lawyers are significantly higher than the hourly rates charged by lawyers of similar experience in the Denver market.  The BOCC argues that the reasonableness of these hourly rates

6

must be judged in comparison to reasonable hourly rates in the Denver market.  The

record supports RMCC's contention that, in the context of the Washington, D.C.,

market, the hourly rates charged by the Becket Fund are reasonable.  Considering the

complex and specialized issues in this case, the limited availability of the specialized

knowledge of the Becket Fund attorneys, and the relatively limited amount of time the

Becket Fund expended advising RMCC on these issues, I conclude that the hourly rates

charged by the Beckett Fund are reasonable.  This is not to say that these hourly rates

would be reasonable had the Becket Fund represented RMCC for all aspects of this

litigation.  Rather, for the purpose of the limited and specialized advice provided by the

Becket Fund, I conclude that the Becket Fund's hourly rates are reasonable.

However, I agree with the BOCC that several of the time entries on the Becket

Fund's billing records are not proper as part of an award of reasonable attorney fees.  In

support of its motion, RMCC provides a statement of the attorney hours devoted to this

case by Becket Fund attorneys.  *Motion for attorney fees* [#311] filed May 8, 2009,

Exhibit C, Appendix 1.  Several entries on this statement reflect time preparing for and

participating in interviews with the press, responding to press inquires, contacting

supporters, and communicating with members of Congress.  One entry refers to an

inquiry from an AP reporter.  *Id.*, p. 4, entry dated 2/27/2007.  Other entries refer,

inexplicitly, to "AP."  Given the context of these "AP" entries, and absent any other

explanation, I conclude that these entries concern communications with the press.

Several entries concern communications with "Salazar," and some of these appear to

relate to entries concerning a letter to Congress.  Given this context, and absent any

other explanation, I conclude that the references to "Salazar" are references to then

Colorado Senator Ken Salazar.  I read these entries as reflecting services related to communications with Congress.

Communications with the press, communications with members of Congress, and communications with supporters are not services that were reasonably necessary in this litigation.  Therefore, I conclude that charges for attorney time spent providing such services may not be included in an award of reasonable attorney fees.  Some entries on the Becket Fund's statement combine a description of such services with a description of services tied closely to this litigation.  These combined entries do not specify separately the amount of time spent on services reasonably necessary to this litigation and services related to the press, communication with Congress, or communication with supporters.  Lacking a reasonable basis on which I can parse these entries to separate the reasonable from the unreasonable, I conclude that I must exclude the amounts charged in all such combined entries from a determination of the lodestar for the Becket Fund's services.  On this basis, I exclude 13,216 dollars included in the Becket Fund statement from the lodestar amount for the Becket Fund.[2] Subtracting that amount from the amount claimed by RMCC as a lodestar for the Becket Fund's services, 68,135.50 dollars, leaves a lodestar amount of 54,919 dollars for the Becket Fund's services.[3]

---

[2] The entries I have excluded are shown on the Becket Fund's statement. *Motion for attorney fees* [#311] filed May 8, 2009, Exhibit C, Appendix 1.  The excluded entries are: Page One - Picarello, 7/11/2006; Gaubatz, 7/10/2006; Page Two - Rassbach, 6/23/2006; 7/10/2006; Page Four - Picarello, 1/25/2007 through 2/27/2007; Page Five - Rassbach, 1/24/2007; 1/25/2007; Page Six - Rassbach, 1/29/2007; 1/31/2007 through 2/11/2007; 2/16/2007; 2/21/2007; 3/19/2007; Page Seven - Rassbach, 3/30/2007; 7/16/2007; Page Eight - Rassbach, 7/17/2007; 11/27/2007; Page Nine - Windham, 7/25/2007.

[3] I express my lodestar amounts in whole dollars.

Combining the lodestar amount for OJRNR of 1,734,120 dollars with the lodestar

amount for the Becket Fund, 54,919 dollars, results in a gross lodestar amount of

1,789,039 dollars.

## B.  Other Factors

"The product of reasonable hours times a reasonable rate does not end the

inquiry.  There remain other considerations that may lead the district court to adjust the

fee upward or downward . . . ."  **Hensley v. Eckerhart**, 461 U.S. 424, 434 (1983).  I

conclude that three additional factors must be considered in determining a reasonable

fee in this case.  First, the nature of the results obtained is "is particularly crucial where

a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims

for relief."  **Id**. (internal quotation marks in original).  Second, I must examine the

significance of the legal issue presented by the case.  **Barber v. T.D. Williamson, Inc.**,

254 F.3d 1223, 1231 (10th Cir. 2001).  Third, I must examine the broad effect of the

litigation in accomplishing a public goal.  **Id**. at 1231 - 1232.

1.  Results Obtained - Under the circumstances presented by this case, the

results obtained is the predominant factor in determining a reasonable fee.  RMCC

sought two primary forms of relief.  First, RMCC sought an injunction requiring approval

of its special use application.  Second, RMCC sought eight million dollars in damages

for construction delay and additional unspecified compensatory damages on certain civil

rights claims.  RMCC obtained an injunction requiring approval of its special use

application, but it was not awarded damages.

Addressing this factor, I must consider two questions.  "First, did the plaintiff fail

to prevail on claims that were unrelated to the claims on which he succeeded? Second,

did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley v. Eckerhart*, 461 U.S. at 434. I conclude that all of RMCC's claims in this case were based on a common core of facts and closely related legal theories. Addressing the first question, I cannot conclude that RMCC failed to prevail on claims that were unrelated to the claims on which it succeeded, because all of the claims in this case were closely related factually and legally.

In this case, the second question is the key consideration. When a plaintiff brings a case involving a common core of facts or a case based on related legal theories, the case should not be "viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. at 435. In this circumstance, it is improper to determine a reasonable amount of attorney fees by comparing the total number of issues presented in the case with the number of issues on which the plaintiff actually prevailed. *Id*. at 435 n. 11. In these circumstances, the court must determine a reasonable amount of attorney fees in relation to the success achieved. *Id*. at 436. "There is no precise formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id*. at 436 - 437. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id*. at 440. Stated differently, "when a plaintiff relies on interrelated claims in support of a single outcome, failure on some of those claims does not preclude a full recovery when plaintiff achieves the

outcome that she sought." ***Robinson v. City of Edmond***, 160 F.3d 1275, 1283 - 1284 (10th Cir. 1998).

RMCC argues that it attained its primary goal in this litigation: approval of its special use application. Certainly, approval of the special use application was one of the primary forms of relief sought by RMCC, but this was not the only form or relief RMCC sought.  RMCC also sought substantial damages, but did not succeed in obtaining this form of relief.  In short, RMCC won significant and substantial relief, but it did not obtain all of the relevant relief that it sought.  The fact that RMCC was not awarded damages is a significant limitation on the relief obtained in this case in comparison to the scope of this litigation as a whole.  However, I conclude that I cannot tie specific hours spent by RMCC's counsel to one form of relief versus the other.

Lacking a precise basis on which I can account for this limitation in awarding attorney fees, I conclude that RMCC obtained a substantial portion of the relief it sought when it obtained an injunction requiring approval of its special use permit.  Comparing the relief sought by RMCC against the relief obtained by RMCC, and considering the nature of this case as a whole, I conclude that the relief obtained by RMCC was essentially seventy percent of all of the relief sought by RMCC.  A reduction of the lodestar amount by thirty percent accounts fairly for the fact that RMCC did not obtain any damages relief in this case.

2.  Significance of Legal Issue - The Tenth Circuit views this factor as going beyond the actual relief awarded, which is the focus of the first factor, to examine the extent to which the plaintiff succeeded on its theory of liability.  ***Barber v. T.D. Williamson, Inc.***, 254 F.3d 1223, 1231 (10th Cir. 2001).  Again, RMCC's theories of

liability in this case were reticulated and intertwined.  RMCC established that the BOCC violated the RLUIPA when the BOCC treated the RMCC unequally, as compared to a similarly situated secular institution, and that the BOCC imposed both a substantial burden and unreasonable limitations on RMCC, in violation of RLUIPA.  For the most part, parsing between and among RMCC's various claims sheds little light on this factor.

However, it is important to note that RMCC did not succeed on any of its claims alleging that the BOCC intentionally discriminated against RMCC.  Generally, intentional discrimination is considered to be a more invidious form of discrimination than unintentional discrimination.  To this extent, I conclude that RMCC did not succeed on its theory of liability.  This factor weighs in favor of an award of attorney fees but does not weigh significantly toward a higher or lower award than the award indicated after examination of the first and most important factor: results obtained.

3.  Public Goal - This factor requires that I examine the broad effect of the litigation in accomplishing a public goal.  *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1231 - 1232 (10th Cir. 2001).   A "public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct."  *Id*. at 1232.  The *Barber* court cautioned, however, that this factor should not be construed too liberally.  *Id*. at 1233.

The RLUIPA was designed to ensure the protection of underlying First Amendment rights concerning religion. In this case, RMCC's success affirmed important rights because it affirmed certain aspects of RMCC's rights to exercise its religion. The

relief obtained by RMCC will, no doubt, provoke a change in the defendant's conduct because the BOCC has been required to approve RMCC's special use application. Conceivably, RMCC's victory will encourage attorneys to represent civil rights litigants in similar cases.  Like the second factor, this factor weighs in favor of an award of attorney fees but does not weigh significantly toward a higher or lower award than the award indicated after examination of the first and preponderant factor.

4.  Conclusion - Considering these three factors together, I conclude that the first factor, results obtained, is the most important.  Again, the first factor leads me to conclude that an attorney fee award of seventy percent of the lodestar amount is reasonable.  The second and third factors, significance of the legal issue and public goal, do not augur significantly toward a higher or lower award.  Rather, consideration of these factors tends to confirm an award of seventy percent of the lodestar amount.

C.  Conclusion

Having considered the relevant factors in the context of this litigation, I find and conclude that an award of attorney fees in an amount equal to seventy percent of the lodestar amount constitutes an award of reasonable attorney fees.  Seventy percent of the lodestar amount,1,789,039 dollars, is equal to 1,252,327 dollars.  Under § 1988, I will award RMCC attorney fees in the amount of 1,252,327 dollars.

V.  NON-TAXABLE COSTS

Reasonable expenses incurred in representing a client in a civil rights case, other than expenses awarded as costs under 28 U.S.C. § 1920, generally should be included in an award of attorney fees under § 1988.  Such expenses may be awarded if they are the type of expenses usually billed in addition to the attorney's hourly rate.  *Case v.*

*Unified School Dist. No. 233, Johnson County, Kan.*,157 F.3d 1243, 1257 (10th Cir. 1998).   The party seeking such an award bears the burden of establishing the amount of compensable expenses to which they are entitled.  *Id*.

RMCC seeks an award of 39,706 dollars for computerized legal research, 46,595 dollars for video services and costs of electronic trial presentations, 550 dollars for mediation services, 225 dollars for travel expenses, and 2,588 for miscellaneous expenses such as courier service, long distance telephone calls, fax charges, and attorney meals during trial preparation meetings and trial.  The BOCC does not contest either the reasonableness of these expenses or the propriety of including these expenses in an award of attorney fees under § 1988.  Having reviewed RMCC's submission, I conclude that the type and amount of expenses it requests are reasonable.  Thus, I will award to RMCC a total of 89,664 dollars in expenses not taxable as costs under 28 U.S.C. § 1920.

## VI.  CONCLUSION & ORDERS

RMCC is a prevailing party for the purpose of 42 U.S.C. § 1988.  For the reasons discussed above, I find and conclude that under § 1988, the plaintiff is entitled to award of 1,252,327 dollars in reasonable attorney fees and 89,664 dollars in reasonable expenses.

**THEREFORE,  IT IS ORDERED** as follows:

1.  That the plaintiff's **Motion for Attorneys' Fees and Non-Taxable Costs** [#311] filed May 8, 2009, is **GRANTED** in part;

2.  That under 42 U.S.C. § 1988, the plaintiff, Rocky Mountain Christian Church, is **AWARDED** reasonable attorney fees in the amount of 1,252,327 dollars;

14

3.  That under 42 U.S.C. § 1988, the plaintiff, Rocky Mountain Christian Church, is **AWARDED** 89,664 dollars in reasonable expenses;

4.  That the defendant, the Board of County Commissioners of Boulder County, Colorado, **SHALL PAY** these amounts to the plaintiff, Rocky Mountain Christian Church, within 60 days of the date of this order; and

5.  That otherwise, the plaintiff's **Motion for Attorneys' Fees and Non-Taxable Costs** [#311] filed May 8, 2009, is **DENIED**.

Dated January 11, 2010, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge